**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BRIAN J. DRISCOLL, JR., *et al.*, | |
| *Plaintiffs*, | Case No. 1:25-cv-03109-JMC |
| v. | |
| KASHYAP P. PATEL, in his official capacity as Director, Federal Bureau of Investigation, United States Department of Justice, *et al.*, | |
| *Defendants*. | |

<u>**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND............................................................................................................ 3

STANDARD OF REVIEW ............................................................................................ 4

DISCUSSION ................................................................................................................ 4

I.      The CSRA Precludes Plaintiffs' Claims Arising From Alleged Violations of Statutory and Regulatory Provisions (Counts III, IV, and VI) .................................................... 4

II.     Plaintiffs' Remaining Claims Should be Dismissed on the Merits. ........................... 9

    A.   Defendants Possessed Legal Authority, Under Article II Of The Constitution, To Remove Plaintiffs From the FBI. ................................................................................. 9

    B.   Plaintiffs Fail To State Proper Constitutional Claims........................................ 11

    i.    Plaintiffs Fail To State Claims Under The Due Process Clause (Count I). ...... 11

        a.   Plaintiffs Lack a Property Interest In Their Continued Employment At The FBI. 12

        b.   Plaintiffs Have Not Adequately Alleged Reputational Harm As A Result Of Their Removals........................................................................................................ 15

        c.   Plaintiffs Fail to State a Substantive Due Process Claim. ............................ 18

    ii.   Plaintiffs Fail To State a Claim Under The First Amendment ForTermination Due to Perceived Political Affiliation (Count II) .................................................... 19

    C.   Plaintiffs Are Not Entitled To A Declaratory Judgment (Count V) .................... 23

    D.   Mandamus Is Not Available to Plaintiffs (Count VI) ......................................... 23

CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

### Cases

*Albright v. Oliver*,
    510 U.S. 266 (1994) ................................................................ 18

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States*,
    330 F.3d 513 (D.C. Cir. 2003) .................................................. 19

*Am. Fed'n of Gov't Emps., Local 2741 v. District of Columbia*,
    689 F. Supp. 2d 30 (D.D.C. 2009) ............................................ 19

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) .................................................................. 12

*Am. Nat'l Ins. Co. v. FDIC*,
    642 F.3d 1137 (D.C. Cir. 2011) ................................................. 4

*Arabzada v. Donis*,
    725 F. Supp. 3d 1 (D.D.C. 2024) ............................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 4

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972) ................................................................ 12

*Bishop v. Wood*,
    426 U.S. 341 (1976) ................................................................ 14

*Bloch v. Powell*,
    348 F.3d 1060 (D.C. Cir. 2003) ................................................ 13

*Clark v. Cmty. for Creative Non-Violence*,
    468 U.S. 288 (1984) ........................................................... 20, 21

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ................................................................ 14

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992) ................................................................ 18

*Connick v. Myers*,
    461 U.S. 138 (1983) ........................................................... 21, 23

*Crooks v. Mabus*,
    845 F.3d 412 (D.C. Cir. 2016) .................................................. 13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................ 4

*Daney v. Dep't of the Interior*,
    25 F. App'x 994 (Fed. Cir. 2001) .......................................... 13

*Elgin v. Dep't of the Treasury*,
    567 U.S. 1 (2012) ................................................................. 6

*Esparraguera v. Dep't of the Army*,
    101 F.4th 28 (D.C. Cir. 2024) .............................................. 13

*Farah v. Esquire Mag.*,
    736 F.3d 528 (D.C. Cir. 2013) .............................................. 15

*FDIC v. Meyer*,
    510 U.S. 471 (1994) .............................................................. 8

*Filebark v. U.S. Dep't of Transp.*,
    555 F.3d 1009 (D.C. Cir. 2009) ............................................. 7

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ............................................................. 11

*Flaningam v. Cnty. of Winnebago*,
    243 F. App'x 171 (7th Cir. 2007) ......................................... 13

*Fonville v. District of Columbia*,
    38 F. Supp. 3d 1 (D.D.C. 2014) ............................................ 17

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ............................................... 4

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005) ................................................. 6

*Fraternal Order of Police Dep't of Corr. Labor Comm. v. Williams*,
    375 F.3d 1141 (D.C. Cir. 2004) ............................................. 19

*Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.*,
    561 U.S. 477 (2010) ............................................................. 10

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ................................................. 21, 22, 23

*Garrow v. Gramm*,
    856 F.2d 203 (D.C. Cir. 1988) .............................................. 12

*Griffith v. FLRA*,
    842 F.2d 487 (D.C. Cir. 1988) .............................................. 14

*Grosdidier v. Chairman, Broad. Bd. Of Governors*,
   560 F.3d 495 (D.C. Cir. 2009) ................................................................ 6, 9

*Hall v. Ford*,
   856 F.2d 255 (D. C. Cir. 1988) ................................................................ 12

*Hubbard v. Administrator, EPA*,
   982 F.2d 531 (D.C. Cir. 1992) ................................................................. 8

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) (en banc) .................................................. 24

*In re Grand Jury Investigation*,
   315 F. Supp. 3d 602 (D.D.C. 2018) ......................................................... 10

*Jefferson v. Harris*,
   170 F. Supp. 3d 194 (D.D.C. 2016) ................................................... 15, 17

*Jenkins v. Howard Univ.*,
   123 F.4th 1343 (D.C. Cir. 2024) ............................................................. 4

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ............................................................... 16

*Kennedy v. Braidwood Mgmt., Inc.*,
   606 U.S. 748 (2025) ...................................................................... 10, 11

*Lamb v. Holder*,
   82 F. Supp. 3d 416 (D.D.C. 2015) ..................................................... 7, 13

*Lovitky v. Trump*,
   949 F.3d 753 (D.C. Cir. 2020) ............................................................... 24

*Mack v. United States*,
   814 F.2d 120 (2d Cir. 1987) .................................................................. 13

*Masterpiece Cakeshop Ltd. v. Colo. Civ. Rights Comm'n*,
   584 U.S. 617 (2018) ............................................................................ 20

*McCabe v. Barr*,
   490 F. Supp. 3d 198 (D.D.C. 2020) ....................................................... 14

*McDonald v. City of Chi.*,
   561 U.S. 742 (2010) ............................................................................ 19

*McManus v. District of Columbia*,
   530 F. Supp. 2d 46 (D.D.C. 2007) ......................................................... 19

*Metz v. BAE Sys Tech. Sols. & Servs.*,
   774 F.3d 18 (D.C. Cir. 2014) ................................................................. 23

*Mpoy v. Rhee,*
    758 F.3d 285 (D.C. Cir. 2014) ................................................................ 22

*Myers v. United States,*
    272 U.S. 52 (1926) ...................................................................... 10, 11

*Olim v. Wakinekona,*
    461 U.S. 238 (1983) ........................................................................ 14

*O'Donnell v. Barry,*
    148 F.3d 1126 (D.C. Cir. 1998) .............................................................. 16

*Painter v. FBI,*
    694 F.2d 255 (11th Cir. 1982) .............................................................. 13

*Pickering v. Bd. Of Educ.,*
    391 U.S. 563 (1968) ........................................................................ 22

*Printz v. United States,*
    521 U.S. 898 (1997) ........................................................................ 10

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ......................................................................... 21

*Said v. Nat'l R.R. Passenger Corp.,*
    317 F. Supp. 3d 304 (D.D.C. 2018) .................................................... 18, 19

*Seila Law L.L.C. v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) .................................................................... 10, 11

*Spagnola v. Mathis,*
    859 F.2d 223 (D.C. Cir. 1988) ............................................................... 7

*Supreme Court and D.C. Circuit.*
    358 F.3d 931 (D.C. Cir. 2004) ............................................................ 1, 8

*Taylor v. Resolution Trust Corp.,*
    56 F.3d 1497 (D.C. Cir. 1995) .............................................................. 17

*Tehran v. Rubio,*
    No. 25-cv-1584 (JMC), 2025 WL 3551629 (D.D.C. Dec. 11, 2025) ...................... 3, 9

*Texas v. Johnson,*
    491 U.S. 397 (1989) ........................................................................ 20

*Thomas v. Principi,*
    394 F.3d 970 (D.C. Cir. 2005) ................................................................ 4

*Thompson v. District of Columbia,*
    530 F.3d 914 (D.C. Cir. 2008) .............................................................. 12

*Trump v. United States*,
603 U.S. 593 (2024) ......................................................................... 9, 11

*United States v. Fausto*,
484 U.S. 439 (1988) ..................................................................... 5, 6, 7

*Vitarelli v. Seaton*,
359 U.S. 535 (1959) ............................................................................ 8

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
768 F. Supp. 2d 117 (D.D.C. 2011) ................................................... 4

*Wilbur v. U.S. ex rel. Barton*,
46 F.2d 217 (D.C. Cir. 1930) ........................................................... 10

*Winder v. Erste*,
511 F. Supp. 2d 160 (D.D.C. 2007) ................................................. 19

## Statutes

5 U.S.C. § 2108 ................................................................................ 13
5 U.S.C. § 2301 .................................................................................. 6
5 U.S.C. § 2302 .................................................................................. 7
5 U.S.C. § 3151 ........................................................................... *passim*
5 U.S.C. § 4301 .................................................................................. 6
5 U.S.C. § 7501 .................................................................................. 6
5 U.S.C. § 7511 ......................................................................... 6, 7, 13
5 U.S.C. § 7513 .................................................................................. 6
5 U.S.C. § 7543 ........................................................................... *passim*
5 U.S.C. § 7703 .................................................................................. 6
28 U.S.C. § 1361 ..................................................................... 5, 23, 24
28 U.S.C. §§ 2201–02 ..................................................................... 23

## Other Authorities

28 C.F.R. §§ 0.157, 0.159 ................................................................ 11
Fed. R. Civ. P. 12 ....................................................................... *passim*

## INTRODUCTION

Plaintiffs—three former senior Federal Bureau of Investigation employees who were removed from the Bureau and from federal service in the summer of 2025—challenge their removals on multiple statutory, regulatory, and constitutional grounds. Accepting Plaintiffs' factual allegations as true under Federal Rule of Civil Procedure 12, each served the FBI across multiple assignments for close to twenty years, ultimately rising to positions of senior career leadership within the Bureau before being removed. To remedy their allegedly unlawful removals, each seeks reinstatement to the FBI, a name-clearing hearing, backpay, and other relief as appropriate to restore them to the roles they lost. Compl. ECF No. 1, at 67 ("Request for Relief"). But their statutory and regulatory claims should be dismissed for lack of subject-matter jurisdiction, under the Civil Service Reform Act of 1978 ("CSRA") and its preclusion of such claims for employees that, like Plaintiffs, are afforded no remedies under its scheme. And their constitutional claims should be dismissed on the merits.

As a threshold matter, jurisdiction over Plaintiffs' statutory and regulatory claims—Counts III, IV, and VI—is squarely foreclosed. Each of these claims asserts that the FBI failed to follow required procedures when removing Plaintiffs, thus rendering their removals a "legal nullity" (Count III) and ultra vires (Count IV), deficiencies subject to judicial correction through mandamus (Count VI). But as the D.C. Circuit explained in *Graham v. Ashcroft*, the CSRA provides a comprehensive, reticulated statutory scheme for administrative and judicial review of most federal personnel actions, and does not permit judicial review of such actions under other statutory or regulatory authorities, as repeatedly recognized by the Supreme Court and D.C. Circuit. 358 F.3d 931, 934-36 (D.C. Cir. 2004) (Roberts, J.).

Plaintiffs' constitutional claims—asserted under the Fifth Amendment's Due Process Clause (Count I) and the First Amendment (Count II)—should be dismissed on the merits, as neither states a claim under Rule 12(b)(6). Broadly, the Constitution's Article II provides the President and those exercising executive authority on his behalf substantial latitude in removing subordinate federal personnel, such as Plaintiffs, similarly charged with exercising

1

executive authority. But even if the Court declines to uphold Plaintiffs' removals based on Article II, their constitutional claims fail on the merits.

As to their Fifth Amendment claims, Plaintiffs have failed to show that they have a cognizable property interest in their continued FBI employment that would entitle them to due process before removal. Although the FBI, by regulation and internal policy, provides for certain procedures when a member of the FBI Senior Executive Service (SES) is terminated, FBI's policies do not create an entitlement to continued employment at the FBI. Plaintiffs also fall far short of alleging a constitutionally cognizable injury to their reputation, as Defendants have not publicly disparaged Plaintiffs, by name or otherwise, after their termination, and Plaintiffs have pled no facts to suggest that the FBI's actions have harmed their future employment prospects in a constitutionally cognizable way.

Plaintiffs' First Amendment claim similarly lacks merit. Their chief contention is that Defendants committed viewpoint discrimination in removing them based on an alleged perception that Plaintiffs' execution of their duties as law enforcement officers was borne of political motives and constituted an act of disloyalty toward the President. But there can only be viewpoint discrimination if one is engaging in "speech" in the first place. On that score, Plaintiffs' complaint falls short. Performing one's work duties is not speech, nor is it the type of expressive conduct the First Amendment protects. Even if it was, the First Amendment's protections are far more limited in the context of government employment. Critically, when an employee engages in speech in connection with official duties, no First Amendment claim lies. Here, Plaintiffs do not merely allege speech in connection with official duties; they allege that their official duties *are* a form of protected speech. Plaintiffs' theories would vastly expand the First Amendment's reach in employment cases and dramatically undermine the Executive Branch's ability to carry out the laws pursuant to Article II.

Accordingly, the Court should grant Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

Plaintiffs allege they were removed from the FBI and from federal service on August 8, 2025. Compl. ¶¶ 188–193 (Driscoll); *id.* ¶¶ 194–202 (Jensen); *id.* ¶¶ 203–08 (Evans).[1] Each served the FBI with distinction across multiple assignment for many years, ultimately rising to senior leadership positions as members of FBI's SES. *Id.* ¶ 26 (Driscoll); *id.* ¶ 38 (Jensen); *id.* ¶ 47 (Evans). Each occupied a significant management role within the Bureau at the time of his removal. Mr. Driscoll, who briefly served as Acting Director at the beginning of the Administration, Compl. ¶ 78, was "responsible for the [FBI's] Critical Incident Response Group," a role that placed him "in charge of all FBI special operations." Compl. ¶ 12. Mr. Jensen was the Assistant Director in Charge of the FBI's Washington field office. *Id.* ¶ 27. And Mr. Evans was the Special Agent in Charge of the FBI's Las Vegas field office at the time of his removal. *Id.* ¶ 39.

Plaintiffs filed their six-count complaint on September 10, 2025, alleging that they were "the targets of Defendants' retribution for their refusals to politicize the FBI[,]" *Id.* ¶ 8. Count I alleges that Plaintiffs were deprived of interests protected by the Fifth Amendment without due process. Compl. ¶¶ 226–34. Count II alleges that Plaintiffs First Amendment rights were violated because they were terminated based upon "an incorrect perception that Plaintiffs' involvement in legitimate law enforcement activities was born of political motives and constituted acts of political disloyalty to President Trump." *Id.* ¶¶ 235–42. Two other claims—Count IV, alleging "ultra vires action in violation of constitutional authority," and Count V, for a declaratory judgment—are also premised on alleged underlying violations of the Constitution. *Id.* ¶¶ 249–54 (Count IV), ¶¶ 255–58 (Count V). One of the counts, Count III, alleges Plaintiffs terminations are a "legal nullity" because they did not comport with procedural requirements allegedly imposed by 5 U.S.C. §§ 3151, 7543, and FBI's regulations and policies regarding its SES. *Id.* ¶¶ 243–48. Finally, Plaintiffs plead a writ of mandamus

---

[1] "[A]t the motion to dismiss stage, the Court is bound to assume the truth of Plaintiffs' material factual allegations and accept as true all well-pleaded facts and inferences." *Tehran v. Rubio*, No. 25-cv-1584 (JMC), 2025 WL 3551629, at *4 (D.D.C. Dec. 11, 2025).

"commanding Defendants to return them to their respective offices and not remove them from federal service without following lawful procedures." *Id.* ¶¶ 259–61.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is appropriate if, assuming the truth of all well-pled factual allegations, Plaintiffs have failed to state a claim upon which relief can be granted. To pass muster, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" and other conclusory assertions warrants dismissal. *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court may also consider materials attached to the complaint or incorporated by reference into the complaint in evaluating a Rule 12(b)(6) motion. *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

To survive a Rule 12(b)(1) motion, the party asserting subject matter jurisdiction—here Plaintiffs—bear "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, however, courts "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack, 80*8 F.3d 905, 913 (D.C. Cir. 2015)).

## DISCUSSION

### I.    The CSRA Precludes Plaintiffs' Claims Arising From Alleged Violations of Statutory and Regulatory Provisions (Counts III, IV, and VI)

Plaintiffs' claims challenging their removals on statutory or regulatory grounds—

Counts III, IV, and VI—fail for lack of subject-matter jurisdiction, as they are precluded by the CSRA.

Each of these claims is grounded in statute or regulation. First, Plaintiffs' assert their removals are a "legal nullity" because Defendants did not accord them "the required due process statutorily mandated in the event of an adverse action brought against a member of the FBI SES, according to the FBI SES policy promulgated pursuant to 5 U.S.C. § 3151 and the mandatory removal protections required by 5 U.S.C. § 7543(a)–(c)."[2] Compl. ¶ 245 (Count III). Similarly, Plaintiffs allege Defendants acted *ultra vires* because Director Patel "had no authority to terminate Driscoll and Jensen from federal service" under the FBI's SES policy, and that he was not authorized to do pursuant to Article II of the Constitution. *Id.* Compl. ¶¶ 249–54 (Count IV). Finally, Plaintiffs argue, pursuant to 28 U.S.C. § 1361, that they are "entitled to a writ of mandamus commanding Defendants to return them to their respective offices and not remove them from federal service without following lawful procedures." Compl. ¶¶ 259–61 (Count VI).

And because they are based on purported statutory or regulatory requirements, each of these claims should be dismissed on jurisdiction grounds. Subject to limited exceptions, judicial review of adverse employment actions taken by the federal government is governed by the CSRA. The CSRA "replace[d] the haphazard arrangements for administrative and judicial review of personnel action[s]" with an "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 444–45 (1988). The CSRA is not just comprehensive and integrated; it "is the

---

[2] Plaintiffs' allegations about the contents of the FBI SES policy, Compl. ¶¶ 219–20, 222–25, appear to be based on a document that is not an operative FBI policy. The FBI's operative SES policy (last revised in 2023) does not contain this language, and the FBI has a separate policy that generally mirrors § 7543 and applies to all FBI employees. Regardless, the CSRA precludes claims arising from violations of statutory and regulatory provisions, whatever their source.

exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier v. Chairman, Broad. Bd. Of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see also Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–13 (2012) (holding no exception to CSRA exclusivity for constitutional challenges to a statute). In other words, regarding remedies for non-constitutional employment-related claims, and with a few exceptions inapplicable here, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.).

The CSRA channels judicial review of most covered claims through the Merit Systems Protection Board, and from there on to the U.S. Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703. It also establishes, among other things, a reticulated remedial structure for claims involving:  (i) personnel actions based on unacceptable performance, 5 U.S.C. § 4301 *et seq.* ("Chapter 43"), (ii) certain personnel actions taken in alleged violation of the merit system principles, 5 U.S.C. § 2301 *et seq.* ("Chapter 23"), and (iii) certain defined major personnel actions based on misconduct, 5 U.S.C. § 7501 *et seq.* ("Chapter 75"). *See Fausto*, 484 U.S. at 445–47. For example, Chapter 75 establishes that an "employee" (as that term is defined at 5 U.S.C. § 7511) may be removed "only for such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a), and that an employee is entitled to certain procedural protections in the event that his or her employing agency proposes removal, *id.* § 7513(b)–(d).

FBI personnel are treated differently than most other government employees with respect to judicial and administrative review of such statutorily defined adverse actions. The CSRA excludes certain categories of employees from the remedies that would otherwise be available to them under Chapters 23, 43, and 75. Most relevant here, Chapter 75 of the CSRA does not apply to most FBI personnel:   "This subchapter does not apply to an employee . . . whose position is within the . . . the Federal Bureau of Investigation . . . unless subsection (a)(1)(B) of this section or section 1005(a) of title 39 is the basis for this subchapter's

applicability."[3] *Id.* § 7511(b)(8).

Because the CSRA is both a comprehensive *and* an exclusive scheme for redressing personnel actions based on alleged misconduct, the exclusion of most FBI employees from the CSRA not only means they cannot bring claims under the review scheme created by the CSRA; it precludes them from challenging employment decisions on any basis other than the Constitution. "[T]he exclusion of particular employees . . . from the CSRA [i]s not an invitation to those employees to sue under other statutes but a 'manifestation of a considered congressional judgment that they should not have statutory entitlement to review.'" *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *Fausto*, 484 U.S. at 448–49). Another court in this district reached just this conclusion with respect to a challenge brought by an FBI employee removed for alleged misconduct. *Lamb v. Holder*, 82 F. Supp. 3d 416, 421 (D.D.C. 2015) (explaining that a former FBI employee "is excluded from the CSRA provisions regarding termination, and therefore his termination is not subject to judicial review").[4]

One of the consequences of the FBI's exclusion from the CSRA is that its SES system is qualitatively different from the system that applies to most federal agencies. The FBI's SES system, created through an act of the Attorney General's discretion, is governed by internal regulations and memoranda, and is overseen by the Director of the FBI and the Deputy Attorney General. *See* 5 U.S.C. § 3151. The FBI's SES rules do "provide for . . . removal or suspension consistent with subsections (a), (b), and (c) of section 7543 (except that any hearing

---

[3] So far as applicable to the FBI, the exception to the exception in Chapter 75 is for those FBI employees who are "preference eligible"—certain military veterans or their family members. In other words, for example, certain veterans who work for the FBI are covered by Chapter 75, whereas the Bureau's employees who don't fall within this exception to the exception are not. No Plaintiffs alleges such qualifying military service.

[4] The CSRA does not preclude judicial review of claims under certain anti-discrimination statutes, such as Title VII of the Civil Rights Act, *see* 5 U.S.C. § 2302, and the D.C. Circuit has never "suggest[ed] that [it] precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether," *Spagnola v. Mathis*, 859 F.2d 223, 229–30 (D.C. Cir. 1988).

or appeal to which a member of the [FBI SES] is entitled shall be held or decided pursuant to procedures established by regulations of the Attorney General)." *Id.* § 3151(a)(5)(D). But these provisions exist outside of the CSRA and do not permit judicial review of adverse employment actions unless Plaintiffs can establish a violation of the Constitution.

The D.C. Circuit has previously ruled that the CSRA precludes challenges to employment actions by FBI employees based on alleged violations of FBI's employment regulations. Plaintiff's claims that Defendants violated their own regulations in taking adverse personnel action are known as *Vitarelli* claims. *See Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959). In *Graham,* 358 F.3d at 935, the D.C. Circuit held, in a suit brought by an FBI agent, that the CSRA precluded review of *Vitarelli* claims:   "[I]t is clear that judicial review of Graham's personnel claims under *Vitarelli* is precluded by the CSRA."

Finally, while the CSRA waives the federal government's sovereign immunity for some claims of backpay, no such waiver of sovereign immunity exists in this case. As such, Plaintiffs' assertion that they are entitled to an "award of backpay and other monetary . . . relief," Compl. at p. 67 (prayer for relief), is without merit. *See FDIC v. Meyer*, 510 U.S. 471, 475, 485-86 (1994); *Hubbard v. Administrator, EPA*, 982 F.2d 531, 532, 539 (D.C. Cir. 1992) (in an APA action alleging a First Amendment violation seeking back pay, the claim for back pay was barred by sovereign immunity).

A 2009 D.C. Circuit decision well summarizes the state of the law and, by extension, the reasons for dismissing Plaintiff's statutory and regulatory claims based on the preclusive effects of the CSRA:

> As our Court has emphasized, the CSRA is comprehensive and exclusive. . . . We have emphasized, moreover, that the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA. As we have explained, Congress designed the CSRA's remedial scheme with care, "intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims." *Filebark*, 555 F.3d at 1010. Allowing employees to end-run the CSRA would undermine Congress's efforts to foster a "unitary and consistent Executive Branch position on matters involving personnel action." *Fausto*, 484 U.S. at 449, 108 S. Ct. 668; *see also*

8

> *Graham*, 358 F.3d at 934. Therefore, we have told federal employees, "what
> you get under the CSRA is what you get." *Fornaro*, 416 F.3d at 67.

*Grosdidier*, 560 F.3d at 497. *See, e.g.*, *Gardner v. United States*, No. CIV A. 96-1467, 1999 WL

164412, at *7 (D.D.C. Jan. 29, 1999), *aff'd*, 213 F.3d 735 (D.C. Cir. 2000) (dismissing claims

under Rule 12(b)(1) on the basis of CSRA preclusion).

These claims are therefore precluded by the CSRA, and the Court should grant

Defendants' motion to dismiss them pursuant to Rule 12(b)(1).

## II.      Plaintiffs' Remaining Claims Should be Dismissed on the Merits.

The complaint fares no better under the Rule 12(b)(6) standard. As a threshold matter,

Defendants possessed the legal authority, pursuant to Article II of the Constitution, to remove

Plaintiffs from their positions, even if statutory and regulatory rules purport to limit

Defendants' ability to do so. But even if the Court concludes that Article II is not an

independent source of authority for removing Plaintiffs, the complaint fails to state proper

claims under the First Amendment, Fifth Amendment, or the various statutory and regulatory

authorities governing the FBI SES (claims that, as discussed above, the Court is precluded

from considering in the first place). Dismissal of the complaint pursuant to Rule 12(b)(6) is

therefore warranted.

### A.    Defendants Possessed Legal Authority, Under Article II Of The Constitution, To Remove Plaintiffs From the FBI.

Article II gives the President, and those exercising his constitutional authority to

execute the laws on his behalf, the authority to remove from office those exercising substantial

aspects of executive power on behalf of the President. That principle is sufficient to decide

this case. Plaintiffs held "tactical, operational, and supervisory duties" within the highest

ranks of the FBI. Compl. ¶ 238. Thus, they held substantial authority as to a "quintessential[]"

Article II power, that of investigating and prosecuting federal crime. *Trump v. United States*,

603 U.S. 593, 620 (2024). Under these circumstances, any statutory restriction on Plaintiffs'

removal would violate Article II.

Article II of the Constitution vests the President with "[t]he executive Power" and

directs him to ensure the law is faithfully executed. *Seila Law L.L.C. v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020). The President, of course, must rely on others to assist him in executing the laws. *See id.* at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints" (internal citations and quotation marks omitted)); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666-67 & n.51 (D.D.C. 2018), aff'd, 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). To ensure that those officers faithfully execute the laws, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514.

Whie "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may also properly exercise that power on his behalf. *See* U.S. Const., art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). As those officials exercise executive power, their acts are attributable to the President. *See, e.g., Printz,* 521 U.S. at 922 (the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. U.S. ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that the [P]resident speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties and that the acts of the heads of departments, within the scope of their powers, are in law the acts of the President." (internal quotations to *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839), and *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879), omitted)).

"[T]he power of removal of executive officers [is] incident to the power of appointment." *Myers v. United States*, 272 U.S. 52, 119 (1926); *see Kennedy v. Braidwood Management*, 606 U.S. 748, 763 (2025) (citing the same). By statute, the Attorney General has

the authority to appoint members of the FBI SES. *See* 5 U.S.C. § 3151(b)(1). DOJ has promulgated regulations that commit supervision of the FBI SES to the Deputy Attorney General, who may, in turn, redelegate that authority to a subordinate, such as the Director of the FBI. 28 C.F.R. §§ 0.157, 0.159. In these circumstances, Article II protections apply the same as if the President had terminated Plaintiffs himself.[5]

### B. Plaintiffs Fail To State Proper Constitutional Claims

The Court need not decide the case on Article II grounds to dismiss the Complaint for failure to state a claim. Plaintiffs' removals implicate no protected property or liberty interests, which defeats their due process claim (Count I). Nor do their removals implicate any speech or association right under the First Amendment (Count II).

### i. Plaintiffs Fail To State Claims Under The Due Process Clause (Count I).

In Count I, Plaintiffs allege that their removals violated both substantive and procedural due process under the Fifth Amendment. As to procedural due process, Plaintiffs have failed to plead a cognizable property or liberty interest over which they were entitled to

---

[5] The Supreme Court has recognized only two exceptions to the general rule that an executive branch officer must be removable at will. *See Myers*, 272 U.S. 52. First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, "Congress could provide tenure protections to certain inferior officers with narrowly defined duties." *Id.* at 204.

Neither exception applies here. Plaintiffs are unlike commissioners of a multimember body of experts, balanced along partisan lines, exercising quasi-legislative and quasi-judicial power, as the Supreme Court found was at issue in *Humphrey's Executor. Id.* at 216. And Senior Executive Service officials exercise significant executive power such that they are generally removable without cause under Article II. *See Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 759–60 (2025). That is especially true for FBI SES employees like Plaintiffs, who carry out the President's "conclusive and preclusive" authority over the "investigation and prosecution of crimes . . . a quintessentially executive function." *Trump*, 603 U.S. at 620 (quotation omitted). Regulations and policies that mirror the statutory protections of the CSRA would raise serious constitutional questions if they were interpreted in a manner that encroaches on the removal authority of the President and the Attorney General pursuant to Article II.

receive due process. As to substantive due process, Plaintiffs cannot demonstrate that their removal from the FBI violated fundamental rights. Thus, Count I should be dismissed.

### a. Plaintiffs Lack a Property Interest In Their Continued Employment At The FBI.

Plaintiffs' procedural due process claim fails at the threshold because they have no protected property interest in continued employment at the FBI. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest . . . . Only after finding the deprivation of a protected interest do [courts] look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (internal citation omitted). To have such an interest in a benefit, "a person clearly must have . . . more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "For [an] employee to have a constitutionally protected property interest in his job," he must prove an "objectively reasonable expectation that he [was] entitled to retain it." *See Hall v. Ford*, 856 F.2d 255, 256 (D. C. Cir. 1988).

At-will government employees lack a property interest in their jobs. "Most cases involving government employees fall into one of two categories: terminable at will or terminable only for cause." *Id.* at 265. "Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." *Id.*; *see also Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008) (an employee has a property interest in a government position only if, under the law, "he could be removed only 'for cause.'" (citation omitted)).

The conditions under which courts hold that government employment is for cause, rather than at will, are narrow. The D.C. Circuit has noted that "our attention has yet to be called to any case where a court has held that a government employee has a protected property interest in employment where language qualifying discharge for 'cause' or for comparable reasons, is not present." *Garrow v. Gramm*, 856 F.2d 203, 206–07 (D.C. Cir. 1988). Moreover,

"[t]o create a protected property interest, regulations must limit discretion by 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)). Put otherwise, a "claim of entitlement is not viable when a government agency wields significant or unfettered discretion in determining whether to award or rescind a particular benefit." *Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016) (quotation marks omitted). Finally, handbooks, regulations, or policies that use permissive language when discussing potential grounds for dismissal do not limit the bases on which an employer may remove an employee and, thus, do not create a property interest in continued employment. *Flaningam v. Cnty. of Winnebago*, 243 F. App'x 171, 173–74 (7th Cir. 2007); *see also Daney v. Dep't of the Interior*, 25 F. App'x 994, 996 (Fed. Cir. 2001).

Contrary to Plaintiffs' assertions, Compl. ¶ 248, they were at-will employees who did not enjoy for-cause removal protections. Although Chapter 75 of the CSRA provides such protections for many federal employees, 5 U.S.C. §§ 7511, 7513, it generally excludes FBI employees, 5 U.S.C. § 7511(b)(8). And "[t]hose employees not covered by the termination provisions of the CSRA, like [Plaintiffs], have no . . . property right [in their continued employment]." *Lamb*, 82 F. Supp. 3d at 424; *see also, e.g.,* E*sparraguera v. Dep't of the Army,* 101 F.4th 28, 33 (D.C. Cir. 2024) ("If the employee serves at will . . . the employee has no property interest.");*Mack v. United States*, 814 F.2d 120, 123 (2d Cir. 1987); *Painter v. FBI*, 694 F.2d 255, 257 (11th Cir. 1982). "Senior Executive Service employee[s] at the highest level of the Bureau," like Plaintiffs, are "terminable at will by the Director" and have "no inherent entitlement to remain in [their] position[s]." *Strzok v. Garland*, No. 1:19-cv-02367-ABJ, Memo Op., ECF No. 164, at 28 (D.D.C. Sept. 23, 2025). Similarly, while veterans serving in the FBI may qualify as statutorily defined "preference-eligible" employees entitled to for-cause protections, *see* 5 U.S.C. § 2108(3), members of FBI's SES, like Plaintiffs, are excluded from that statutory status. *Id.* Thus, as non-preference eligible FBI employees, Plaintiffs were

excluded from the CSRA's for-cause protections and lacked a constitutionally cognizable property interest in their former jobs.

Plaintiffs may contend, in reliance on *McCabe v. Barr*, 490 F. Supp. 3d 198 (D.D.C. 2020) and *Esparraguera*, that 5 U.S.C. § 3151 and 5 U.S.C. § 7543 "require good cause to remove a member of the FBI SES and that this protection is sufficient to create a property interest." 490 F. Supp. 3d at 218. Section 3151 gives the Attorney General the discretion to create an FBI SES system, and provides, once created, regulations regarding "removal or suspension consistent with subsections (a), (b), and (c) of section 7543." 5 U.S.C. § 3151(a)(5)(D). Respectfully, the Court should not rely on *McCabe* and similar cases recognizing for-cause employment rights in FBI employees. While section 3151 requires that regulations should provide for removal "consistent with" section 7543, section 7543 does not apply to the FBI and Plaintiffs do not contend otherwise. *Esparraguerra* is distinguishable from this case at least because it involved an SES employee covered by the CSRA. And even if one assumes Plaintiffs are correct and that section 7543's rules apply to their removal subject to section 3151's limitations, the right to contest termination with the head of the agency does not amount to an entitlement to continued employment as it does for those who enjoy the CSRA's for-cause protections. "[M]erely conditioning an employee's removal on compliance with certain specified procedures" does not confer a "right to continued employment." *Bishop v. Wood*, 426 U.S. 341, 347 (1976). As the D.C. Circuit has put it more generally, the "provision of procedural safeguards cannot in itself create a property interest for purposes of due process analysis." *Griffith v. FLRA*, 842 F.2d 487, 495 (D.C. Cir. 1988); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("an expectation of process is not, without more, a liberty interest protected by the Due Process Clause."). This conclusion is consistent with the Supreme Court's admonition that "[t]he categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

14

The law has been clear for decades that FBI employees do not have the same type of expectancy in continued employment as other career civil servants. An interpretation of the Constitution that would countermand this judgment and effectively grant FBI SES members the rights that the CSRA expressly denies them would upend this longstanding norm. Accordingly, Plaintiffs' procedural due process claim should be rejected.

        **b.**      **Plaintiffs Have Not Adequately Alleged Reputational Harm As A Result Of Their Removals.**

Plaintiffs also base their procedural Due Process claim on an alleged deprivation of a liberty interest, arguing that the FBI's actions in connection with their removals harmed their professional reputations. But Plaintiffs' allegations are not enough to proceed on this alternative Due Process theory.

The crux of Plaintiffs' contention is that because Defendants "publicly connected the termination actions to allegations that Plaintiffs had been 'weaponizing' the FBI," their "professional reputation[s]" were "impugned," leading "not only [to] the loss of Plaintiffs' present government employment" but also "harm[ to] their future employment prospects." Compl. ¶ 229. In the D.C. Circuit, "a plaintiff may avail himself of two different legal theories to establish a reputation-based due-process violation." *Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016). Under a "reputation plus" theory, a plaintiff must show (1) that the government's defamation resulted in a harm beyond reputation, such as a loss of present employment; (2) that the government has actually stigmatized his reputation by charging the individual with dishonesty or unprofessional conduct; and (3) plead facts that show the stigma has hampered his future employment prospects. *Id.* (cleaned up). This test assumes that the government has, in fact, defamed the plaintiff. *See, e.g., Farah v. Esquire Mag.,* 736 F.3d 528, 533–34 (D.C. Cir. 2013) (elements of a defamation claim in the District of Columbia). A plaintiff may also plead a "stigma or disability" claim, which, unlike a "reputation plus" claim, "does not depend on official speech, but on a continuing stigma or disability arising from official action" that "foreclosed [the plaintiff's] freedom to take advantage of other

15

employment opportunities." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). Here, Plaintiffs' complaint fails to state either type of reputation-based due process claim, for several reasons.

First, the complaint fails to allege that Defendants publicized some statement about Plaintiffs that is defamatory, as is necessary for a "reputation-plus" claim based on speech. Plaintiffs were terminated via a letter from Director Patel, and while the complaint alleges that the "firings were covered extensively in the news media," Plaintiffs do not allege that Defendants publicized the letters or the statements made within them. Compl. ¶¶ 209–10. Instead, they allege that "Defendants—primarily through [Director] Patel—publicly connected the termination actions to allegations that Plaintiffs had been 'weaponizing' the FBI." *Id.* ¶ 229. The only allegation in the complaint that appears to support this claim is a claim that Director Patel publicly associated Plaintiffs with the weaponization and politicization of the FBI during an interview given on a news show on August 20, 2025, twelve days after the firings occurred. *Id.* ¶¶ 210–12.

Assuming it is true that the only "firings within the FBI that occurred between August 8, 2025 and August 20, 2025, were the unlawful terminations" of the three Plaintiffs and two other individuals, Compl. ¶ 213, Director Patel's statement does not constitute defamation of Plaintiffs. Director Patel did not refer to the Plaintiffs by name or through other means. He did not limit his comments temporally such that he was only referring to the time frame on which Plaintiffs focus. He did not limit his comments to "firings"; he used the phrase "removed from leadership positions," which could include early retirement or transfer as well as termination. In short, Plaintiffs allege no basis for understanding the comments as referring to them, obliquely or otherwise. Moreover, to the extent Plaintiffs are correct that Mr. Patel claimed in the interview that "the Mar-a-Lago search warrant execution" was the result of "weaponization and politicization by the FBI and the DOJ,'"[6] Compl. ¶ 211, the complaint

---

[6] Review of the interview shows that although Mr. Kudlow asked Director Patel numerous questions about Mar-a-Lago, Director Patel's responses to those questions focused on the

does not allege that Plaintiffs had any role in the execution of the Mar-a-Lago search warrant, or that Plaintiffs were terminated because Defendants believed they had a role in the search such that Mr. Patel's statements in the interview would be understood to apply to them. A single paragraph of the complaint notes that Plaintiffs had to "participate" in the investigation of "President Trump's alleged retention of classified documents," Compl. ¶ 238, but that topic is much broader than execution of a particular search warrant and none of the Plaintiffs alleged any substantial participation in the classified documents investigation. Finally, "weaponization" and "politicization" are too far afield from allegations of "dishonesty," "criminal conduct," "mental illness" or "lack of intellectual ability" that would ordinarily be deemed to compromise a plaintiff's liberty interest, as they do not reasonably suggest Plaintiffs are incapable of working in law enforcement. *Fonville v. District of Columbia*, 38 F. Supp. 3d 1, 14 (D.D.C. 2014).

Even if Director Patel's statements were deemed to constitute defamation of Plaintiffs, the complaint fails to allege a reputation-based due process claim for yet another reason. Plaintiffs must show they have "been broadly precluded from working in [their] fields," and not simply episodic evidence of difficult obtaining employment. *Jefferson*, 170 F. Supp. 3d at 205–06; *see also Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995) ("[P]laintiff[s] may demonstrate that the government's action precludes [them] . . . from such a broad range of opportunities that it interferes with [their] constitutionally protected right to follow a chosen trade or profession.") (internal quotations and citation omitted). Plaintiffs' cursory allegations that Defendants' statements "intended to and did adversely impact Plaintiffs' reputations and employment opportunities" is not adequate, under Rule 12(b)(6) as interpreted by *Iqbal* and *Twombly*, to state such a claim. Compl. ¶ 231. Plaintiffs do not

---

topic of "Russiagate." But the Complaint does not allege that Plaintiffs participated in any investigation into allegations that President Trump's colluded with Russia, either. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

plead facts demonstrating what future employment they are seeking to engage in, or how any statements made by Defendants are hampering efforts to seek that employment. They have not alleged even the episodic evidence courts in this Circuit have found insufficient in past cases, such as a rejection from a job for which they applied, let alone a broad preclusion of opportunities in the field of law enforcement that would give rise to a Fifth Amendment claim.

Plaintiffs lack a cognizable property right in continued employment in an FBI SES position conferring substantial authority over the President's Article II powers to execute the laws, and cannot salvage their claims by including threadbare allegations of defamation in the complaint. As such, Plaintiffs' procedural due process claims must be dismissed.

### c.    Plaintiffs Fail to State a Substantive Due Process Claim.

Count I labels Plaintiffs' Fifth Amendment claims as sounding in both "substantive and procedural due process," but the complaint does little to spell out any theory supporting a substantive Due Process claim. Such a claim would lack merit in any event, and cannot save Count I from dismissal.

To establish a substantive due process claim in the context of executive action, a plaintiff must show, so far as is relevant here, that there is a (1) significant, protected property interest, and (2) conscience-shocking executive action. *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 341 (D.D.C. 2018), *amended on reconsideration*, 390 F. Supp. 3d 46 (D.D.C. 2019). Only significant property rights are protected under the substantive due process doctrine because, "[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process," given that the "guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Indeed, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). As such, substantive due process is limited to rights that are "fundamental to our scheme of ordered liberty," or "deeply rooted

in this Nation's history and tradition." *McDonald v. City of Chi.*, 561 U.S. 742, 767 (2010).

Plaintiffs' substantive due process claim easily fails both prongs of this test. As discussed above, Plaintiffs have no constitutionally protected property interest in their continued employment with FBI. But even if they did, numerous courts in this Circuit have concluded that substantive due process doctrine does not protect property interests in public employment. *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003); *Said*, 317 F. Supp. 3d 304, 340–41 (D.D.C. 2018), *amended on reconsideration*, 390 F. Supp. 3d 46 (D.D.C. 2019); *Am. Fed'n of Gov't Emps., Local 2741 v. District of Columbia*, 689 F. Supp. 2d 30, 36 (D.D.C. 2009); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 71 (D.D.C. 2007); *Winder v. Erste*, 511 F. Supp. 2d 160, 182–83 (D.D.C. 2007), *aff'd in part, rev'd in part sub nom. & remanded*, 566 F.3d 209 (D.C. Cir. 2009). And mere allegations that Defendants violated the law in terminating a government employee simply do not rise to the level of conscience-shocking behavior under the relevant legal test. *Said*, 317 F. Supp. 3d at 340–41; *Fraternal Order of Police Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1144–47 (D.C. Cir. 2004).

Defendants' removal of Plaintiffs deprived them of no property or liberty interests that would entitle them to Due Process. Nor did their removals violate any Plaintiff's fundamental rights under the Fifth Amendment. Thus, Count I should be dismissed.

### ii. Plaintiffs Fail To State a Claim Under The First Amendment For Termination Due To Perceived Political Affiliation (Count II)

Plaintiffs' Count II alleges that their removals constituted unlawful retribution for perceived political affiliation under the First Amendment. According to the Complaint, Defendants engaged in "improper acts of political retribution" that were "based on an incorrect perception that Plaintiffs' involvement in legitimate law enforcement activities was born of political motives and constituted acts of political disloyalty to President Trump." Compl. ¶¶ 236–37. The Court should decline the invitation to recognize First Amendment claims on this basis, for several reasons.

19

First, Plaintiffs have failed to allege they have engaged in speech or expressive conduct that the First Amendment protects. Their claims, it appears, rest on allegations of how Defendants perceived their "participa[tion] in a variety of law enforcement investigations." *Id.* ¶ 238. Plaintiffs contend that their "duties and their oath to the Constitution required them to participate" in these investigations, as well as "administrative activities within the FBI" that relate to or support these investigations. *Id.* ¶¶ 238–39. But "law enforcement activities" and "administrative activities" are not "speech"; they are forms of conduct that the First Amendment does not protect at all.

Of course, "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[ ]." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)). Activities such as wearing black armbands, participating in a sit-in, or picketing an employer have been accorded First Amendment protection under this doctrine. *Id.* at 404; *see also Masterpiece Cakeshop Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 655–58 (2018) (Thomas, J., concurring in part and concurring in the judgment). To determine whether particular conduct constitutes protected expression, courts assess whether the conduct was "intended to be communicative" and, "in context, would reasonably be understood by the viewer to be communicative." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984). Plaintiffs' execution of their job duties as FBI employees fails both prongs of this test.

First, the complaint disclaims the idea that Plaintiffs intended their work to be communicative. Rather, Plaintiffs assert that their "tactical, operational, and supervisory [job] duties" and "their oath to the Constitution required them to participate in a variety of law enforcement investigations" and "administrative activities." Compl. ¶¶ 238, 240. They repeatedly classify the performance of their job duties as "apolitical" in nature, and pursuant to a command structure in which they were subordinate to leadership. Compl. ¶ 229 (objecting to alleged characterization of Plaintiffs as "something other than faithful and apolitical law enforcement officials"); *id.* ¶ 240 (alleging Plaintiffs were terminated "because of Defendants'

perception" of the "apolitical performance of their duties"). Moreover, although expressive conduct does not necessarily need to communicate a particular point of view, to the extent Plaintiffs are alleging *viewpoint* discrimination, Plaintiffs' execution of their work functions must not only be "communicative," but communicate some type of message upon which Defendants could allegedly discriminate. There is no plausible basis to conclude that Plaintiffs intended to communicate such a coherent message simply by performing their assigned work responsibilities.

Second, even if Plaintiffs could demonstrate that they intended their work to be communicative in some way, they cannot show that official workplace conduct can be reasonably understood by the viewer to be communicative. Every day, hundreds of thousands of federal workers within the executive branch carry out the duties of their agencies in service to the Constitution. "An observer who sees" them at work carrying out their duties as law enforcement officers or civil servants "has no way of knowing whether" a particular employee is trying to communicate some sort of message simply by performing their job duties, much less a message that could form the basis for retaliation based on a particular viewpoint. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (holding exclusion of military recruiters from access to students on college campuses was not expressive conduct).

Even if the Court concludes that Plaintiffs' performance of their job duties constitutes expressive conduct, Plaintiffs' claim still fails under the Supreme Court's operative test for analyzing speech made by government employees in carrying out their official duties. "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment"; "in certain circumstances," the First Amendment "protects a public employee's right . . . to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Connick v. Myers*, 461 U.S. 138, 143, 146 (1983). When an employee is speaking as a citizen on a matter of public concern, courts follow *Pickering v. Bd. Of Educ.*, 391 U.S. 563 (1968) and its progeny to ask "whether the relevant

21

government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418. But "when public employees make statements pursuant to their official duties," they are "not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

In *Garcetti*, which involved allegations that an employee who had been disciplined for expressing concerns about the adequacy of a warrant application, the Court found that the prosecutor's comments about the application were not protected speech because "his expressions were made pursuant to his duties as a calendar deputy." 547 U.S. at 421. Similarly, in *Mpoy v. Rhee*, 758 F.3d 285, 291 (D.C. Cir. 2014), a teacher employed by the District of Columbia Public School system was found not to have a cognizable First Amendment claim arising from termination for an email he wrote that "report[ed] conduct that interfere[d] with his job responsibilities." *Id.* (quoting *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009)).

That principle is sufficient to decide Plaintiffs' First Amendment claim. Plaintiffs allege that Defendants removed them because they objected to Plaintiffs' apolitical performance of their job duties. Plaintiffs do not merely allege that they engaged in speech in connection with their official duties; they allege that their official duties *are* the "speech" that formed the basis of Defendants' viewpoint discrimination. Compl. ¶ 237 ("Plaintiffs' terminations were unlawful . . . because they were based on an incorrect perception that Plaintiffs' involvement in legitimate law enforcement activities was born of political motives . . . ."); *Id.* ¶ 240 ("Defendants terminated Plaintiffs because of Defendants' perception that their apolitical performance of their duties . . . ran afoul of the political and personal loyalty that Defendants required."). But even if one assumes official duties are expressive conduct tantamount to speech, such speech is necessarily "pursuant to" official duties and not protected by the First Amendment as interpreted by *Connick* and *Garcetti*. As such, Plaintiffs' First Amendment claims may be dismissed without recourse to the sort of balancing test

22

required by *Pickering* and its progeny. There are no competing interests to weigh or balance if an employee is disciplined for "involvement in legitimate law enforcement activities" rather than their speech as a private citizen. Compl. ¶ 237.

First Amendment doctrine protects the private speech of public employees. Nonetheless,

> [w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

*Connick*, 461 U.S. at 146. Expanding First Amendment protections in the manner Plaintiffs suggest would dramatically undermine the government's ability to provide public services in an efficient and accountable manner. *Garcetti*, 547 U.S. at 418. And that concern is especially pointed as to at-will employees responsible for carrying out a core function of the Executive Branch, such as Plaintiffs. Accordingly, the Court should dismiss Count II for failure to state a claim.

## C. Plaintiffs Are Not Entitled To A Declaratory Judgment (Count V)

Plaintiffs' "claim" for a declaratory judgment under 28 U.S.C. §§ 2201–02, Compl. ¶¶ 255–58, is, like their mandamus claim under 28 U.S.C. § 1361, precluded by the CSRA. Even if that were not the case, a separate declaratory judgment "count" is a misnomer. The Declaratory Judgment Act provides for a particular type of remedy in civil cases, but it does not give rise to a cause of action or create an independent source of federal jurisdiction. *Metz v. BAE Sys Tech. Sols. & Servs.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014). As such, there is no freestanding basis for the Court to "declare" that Defendants have violated the law. For these reasons, the Court should dismiss Count V.

## D. Mandamus Is Not Available to Plaintiffs (Count VI)

Count VI alleges that Plaintiffs are "entitled to a writ of mandamus commanding Defendants to return them to their respective offices and not remove them from federal service without following lawful procedures." Compl. ¶¶ 259–61 (citing 28 U.S.C. § 1361). Mandamus is a "drastic" remedy that "is available only in extraordinary situations," and is "hardly ever granted." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (internal quotation omitted). "A court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to [the] plaintiff." *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010)).

This claim, like Plaintiffs' "legal nullity" claim, is precluded by the CSRA, which excludes all other means of challenging an adverse employment decision, including mandamus. *See* Discussion, Part I, *supra*. But even if that were not the case, Plaintiffs' mandamus claim should be dismissed. They have not demonstrated any right to relief, much less a "clear right" to such relief; they have not identified a corresponding "clear duty" to reinstate Plaintiffs purely for the purposes of providing some form of process prior to termination; and they cannot show that some other form of remedy might be more adequate or appropriate in this case. Accordingly, the Court should dismiss Count VI.

*******

24

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to dismiss.

Dated:  January 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Michael J. Gerardi*
MICHAEL J. GERARDI
D.C. Bar #1017949
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 616-0680
Email: Michael.j.gerardi@usdoj.gov

*Counsel for Defendants*

25