**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

BRIAN J. DRISCOLL, JR., *et al.*,

       *Plaintiffs*,

   v.

KASHYAP P. PATEL, in his official capacity
as Director, Federal Bureau of Investigation,
United States Department of Justice, *et al.*,

       *Defendants*.

Case No. 1:25-cv-03109-JMC

---

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

DISCUSSION ..................................................................................................... 2

I.  The CSRA Precludes Plaintiffs' Claims Arising from Alleged Violations of
    Statutory and Regulatory Provisions. ....................................................... 2

II. Plaintiffs' Complaint Should Be Dismissed on the Merits. ........................... 5

    A.  Defendants' Article II Authority Defeats All of Plaintiffs' Claims. ......... 5

    B.  Plaintiffs Fail to State Proper Constitutional Claims. .......................... 8

      i.  Plaintiffs Fail to State a Claim Under the Due Process Clause. ......... 8

        a.  Plaintiffs Lack a Property Interest in Their Continued Employment at
            the FBI. ...................................................................................... 9

        b.  Plaintiffs Did Not Suffer Any Invasion of a Protected Liberty Interest. ....... 11

        c.  Plaintiffs Fail to State a Substantive Due Process Claim. ............................ 15

      ii. Plaintiffs Have Not Sufficiently Pleaded a First Amendment Retaliation
        Claim. ............................................................................................ 17

    C.  The Court Lacks Independent Jurisdiction to Award a Declaratory
        Judgment. ....................................................................................... 21

CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*,
  495 F.3d 695 (D.C. Cir. 2007) (en banc) ..................................................... 15

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011) ................................................................. 21

*Am. Hosp. Ass'n v. Burwell*,
  812 F.3d 183 (D.C. Cir. 2016) ................................................................... 4

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ............................................................................... 9

*Borough of Duryea v. Guarnieri*,
  564 U.S. 379 (2011) .............................................................................. 20

*Branti v. Finkel*,
  445 U.S. 507 (1980) .............................................................................. 17

*C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*,
  310 F.3d 197 (D.C. Cir. 2002) ................................................................... 3

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) .............................................................................. 15

*Connick v. Myers*,
  461 U.S. 138 (1983) .............................................................................. 20

*Doe v. U.S. Dep't of Just.*,
  753 F.2d 1092 (D.C. Cir. 1985) ........................................................... 11, 13

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ................................................................... 7

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012) ................................................................................... 3

*Elrod v. Burns*,
  427 U.S. 347 (1976) .............................................................................. 17

*Filebark v. U.S. Dep't of Transp.*,
  555 F.3d 1009 (D.C. Cir. 2009) ................................................................. 4

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) .................................................................... 4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................................. 7

*\*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ...........................................................................18, 19

*George Washington Univ. v. District of Columbia*,
    318 F.3d 203 (D.C. Cir. 2003) ............................................................... 15

*\*Graham v. Ashcroft*,
    358 F.3d 931 (D.C. Cir. 2004) ..............................................................3, 4

*Griffith v. Fed. Lab. Rels. Auth.*,
    842 F.2d 487 (D.C. Cir. 1988) ............................................................... 11

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
    560 F.3d 495 (D.C. Cir. 2009) ................................................................. 4

*\*Hall v. Ford*,
    856 F.2d 255 (D.C. Cir. 1988) ............................................................... 20

*Harmon v. Liss*,
    116 A.2d 693 (D.C. 1955) ..................................................................... 11

*\*Harrison v. Bowen*,
    815 F.2d 1505 (D.C. Cir. 1987) ................................................... 11, 12, 13

*\*Heffernan v. City of Paterson*,
    578 U.S. 266 (2016) ............................................................................... 19

*Jefferson v. Harris*,
    170 F. Supp. 3d 194 (D.D.C. 2016) ................................................. 11, 13

*Kartseva v. Dep't of State*,
    37 F.3d 1524 (D.C. Cir. 1994) .......................................................... 13, 14

*\*Kennedy v. Braidwood Mgmt., Inc.*,
    606 U.S. 748 (2025) ........................................................................6, 7, 10

*Langeman v. Garland*,
    88 F.4th 289 (D.C. Cir. 2023) ............................................................... 14

*Lovitky v. Trump*,
    949 F.3d 753 (D.C. Cir. 2020) ................................................................. 4

*\*Mazaleski v. Treusdell*,
    562 F.2d 701 (D.C. Cir. 1977) .......................................................... 12, 13

*\*McCabe v. Barr*,
    490 F. Supp. 3d 198 (D.D.C. 2020) ......................................... 8, 9, 10, 15

iv

*McGinnis v. District of Columbia,
 65 F. Supp. 3d 203 (D.D.C. 2014) ........................................................................ 13, 14

McKinney v. District of Columbia,
 142 F.4th 784 (D.C. Cir. 2025) ............................................................................ 13, 14

*McManus v. District of Columbia,
 530 F. Supp. 2d 46 (D.D.C. 2007) ........................................................................ 16, 17

Metz v. BAE Sys. Tech. Sols. & Servs.,
 774 F.3d 18 (D.C. Cir. 2014) ...................................................................................... 21

Myers v. United States,
 272 U.S. 52 (1926) ......................................................................................................... 7

Nixon v. Fitzgerald,
 457 U.S. 731 (1982) ....................................................................................................... 9

*O'Donnell v. Barry,
 148 F.3d 1126 (D.C. Cir. 1998) ........................................................................... 12, 13

Palmeri v. Merit Sys. Prot. Bd.,
 164 F.4th 878 (Fed. Cir. 2026) .................................................................................... 8

Perry v. Sindermann,
 408 U.S. 593 (1972) ..................................................................................................... 17

Pickering v. Board of Education of Township High School District 205,
 391 U.S. 563 (1968) ..................................................................................................... 18

*Printz v. United States,
 521 U.S. 898 (1997) ................................................................................................... 5, 6

Rankin v. McPherson,
 483 U.S. 378 (1987) ..................................................................................................... 20

*Rutan v. Republican Party of Ill.,
 497 U.S. 62 (1990) ................................................................................................. 17, 19

Seila L. LLC v. Consumer Fin. Prot. Bureau,
 591 U.S. 197 (2020) ....................................................................................................... 6

Silverman v. Barry,
 845 F.2d 1072 (D.C. Cir. 1988) .................................................................................. 17

Stovell v. James,
 810 F. Supp. 2d 237 (D.D.C. 2011) ........................................................................... 11

Strzok v. Garland,
 No. 1:19-cv-02367-ABJ (D.D.C. Sept. 23, 2025) ..................................................... 10

*Tri Cnty. Indus., Inc. v. District of Columbia,*
   104 F.3d 455 (D.C. Cir. 1997) ........................................................... 15, 16

*Trump v. United States,*
   603 U.S. 593 (2024) ............................................................................ 7, 9

*United Bldg. & Constr. Trades Council v. Mayor & Council of the City of Camden,*
   465 U.S. 208 (1984) ............................................................................... 16

*United States v. Fausto,*
   484 U.S. 439 (1988) .................................................................................. 4

*United States v. Nixon,*
   418 U.S. 683 (1974) .................................................................................. 7

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ........................................................................... 15, 16

*Wilbur v. United States ex rel. Barton,*
   46 F.2d 217 (D.C. Cir. 1930) .................................................................... 6

*Wolsey v. Chapman,*
   101 U.S. 755 (1879) .................................................................................. 6

*Zinermon v. Burch,*
   494 U.S. 113 (1990) ................................................................................ 15

## Statutes

*5 U.S.C. § 3151 .................................................................................. 3, 7, 8, 10

*5 U.S.C. § 7543 ................................................................................... 3, 8, 10

## Rules

Federal Rule of Civil Procedure 12(b)(1) ............................................. 2, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ................................................ 2, 5

Federal Rule of Evidence 201(b)(2) ........................................................... 7

## Treatises

Restatement (Second) of Torts § 564 ........................................................ 11

## Constitutional Provisions

U.S. Const. art. II, § 1, cl. 1 ..................................................................... 6

U.S. Const. art. II, § 3 ................................................................................ 6

**INTRODUCTION**

Three former Federal Bureau of Investigation (FBI) employees, all members of the FBI's Senior Executive Service (SES), each challenge their removals from service on constitutional, statutory, and regulatory grounds. Each alleges that he was removed without due process, infringing on a protected property interest in continued employment and a protected liberty interest in his reputation. And each contends that he was removed for the exercise of expressive activity protected by the First Amendment or, at least, the *perceived* exercise of such protected activity. But their claims fail at multiple steps.

The Civil Service Reform Act (CSRA) eliminates district court jurisdiction to hear any of Plaintiffs' claims based (either explicitly or impliedly) on any source of law other than the Constitution. Trying to avoid the CSRA's preclusive effect on their statutory and regulatory removal challenges, Plaintiffs attempt to constitutionalize several of their claims for relief here by asserting that Defendants' actions were a "legal nullity" and that Defendants acted in excess of their authority under the Constitution in removing them. But the only provisions Plaintiffs can cite in support of those arguments are statutory. Under controlling D.C. Circuit authority, the CSRA bars review of such claims. Further, this Court has no independent jurisdiction to assess Plaintiffs' standalone claim for declaratory relief.

On the merits, all of Plaintiffs' claims fail in the face of Defendants' asserted Article II authority to remove FBI SES employees, each of whom exercises core executive investigative power on the President's behalf. The President's constitutional prerogative to manage and remove his executive subordinates, which itself may extend to his subordinates, includes the ability to remove employees wielding executive authority. Where he and his officers act within their core Article II authority, any restriction on the President's ability to manage such executive employees poses constitutional concerns. Any such congressional restrictions should be construed to avoid this constitutional conflict.

Plaintiffs' due process claims fail because they cannot show that they were deprived of any protected property or liberty interest without due process. FBI SES members are

1

employed at will, consistent with their high-level exercise of certain law-enforcement duties that lie at the core of the constitutional executive power. At a minimum, they cannot readily claim they possess a constitutional *entitlement* to maintain their executive positions, so they can show no protected property interest in continued employment. And the mere fact that they were removed does not deprive them of any asserted liberty interest in future employment. Under procedural due process, they were not subject to sufficiently severe "opprobrium" to plead any reputational harm from their removals. And under substantive due process, they have not shown that their removals violated any fundamental rights.

Finally, Plaintiffs disavow any argument that they either intended to undertake or were perceived as undertaking any kind of expressive activity in the conduct of their official duties. That dooms their First Amendment retaliation claim. To plead such a cause of action, Plaintiffs must show that they were either engaged in protected activity or that Defendants thought they were. Plaintiffs disclaim any such reading of their factual allegations, so they have failed to plausibly plead any violation of their First Amendment rights. And, even if Defendants *had* removed Plaintiffs in part for their self-described apolitical actions, Defendants' removal decisions in each case fell well within the Government's interests in ensuring the efficient and accountable provision of Government services, thus outweighing any Plaintiffs' interest in taking the actions at issue.

Accordingly, the Court should grant Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## DISCUSSION

### I.    The CSRA Precludes Plaintiffs' Claims Arising from Alleged Violations of Statutory and Regulatory Provisions.

Plaintiffs' claims challenging their removals on statutory or regulatory grounds—Counts III, IV, and VI—fail for lack of subject-matter jurisdiction, as they are precluded by the CSRA. Plaintiffs insist that, really, they challenge their removals on constitutional grounds. But Count III alleges only that Defendants' actions are a "legal nullity" because they

violated "FBI SES Policy promulgated pursuant to 5 U.S.C. § 3151 and the mandatory removal protections required by 5 U.S.C. § 7543(a)–(c)." Compl., ECF No. 1 ¶ 245. That is a claim based on statute and regulation. Plaintiffs also allege that the FBI Director lacked Article II authority to remove them. Compl. ¶ 248. But again, this claim is premised on the assertion that, under statute and regulation, Plaintiffs are not at-will employees. *See id.* ¶ 245. Plaintiffs' opposition offers no basis to recharacterize the claim as something else. In fact, Plaintiffs provide no support at all for their argument that such a claim, which incorporates governing statutes for the applicable legal standard, can somehow be brought as a standalone constitutional claim that Defendants' actions were a "legal nullity."

Even if these statutes could be said to create "protected property interests" or to "not preclude the creation of a property interest," Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 39, ECF No. 20 (citations omitted), they might serve as the basis for a Fifth Amendment due process claim. But Plaintiffs already bring such a claim. *See* Compl. ¶¶ 226–34. And, as Defendants explained in their opening brief and below, that claim fails. *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 11–19, ECF No. 17. Permitting Plaintiffs to recast their statutory claim in constitutional terms to evade the CSRA's preclusive effect on district-court jurisdiction over such claims would permit an "end-run around Congress's clear intent" that the Merit Systems Protection Board (MSPB) interpret and enforce the CSRA. *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002); *see also Elgin v. Dep't of the Treasury*, 567 U.S. 1, 11–12 (2012) (establishing that the CSRA bars district-court review of nonconstitutional claims). And, further, doing so would circumvent controlling authority from the D.C. Circuit. *See Graham v. Ashcroft*, 358 F.3d 931, 934 (D.C. Cir. 2004) (Roberts, J.) (holding that plaintiffs not covered by the CSRA do not have "greater rights" under their asserted claim in federal court than those available under the CSRA to covered employees).

The same holds true for Plaintiffs' *ultra vires* claim. The Constitution itself provides the proper basis for Plaintiffs to challenge their removals on constitutional grounds. And Plaintiffs have availed themselves of the opportunity to do so. *See* Compl. ¶¶ 226–34 (Count I); *id.*

¶¶ 235–42 (Count II). As with the "legal nullity" claim, the *ultra vires* claim asserts that the FBI Director lacked Article II authority to remove Plaintiffs. *See id.* ¶ 252. Again, however, Plaintiffs ground this argument in their interpretation of "federal law and operative SES policy." *Id.* ¶ 251. Plaintiffs thus fail to properly invoke this Court's jurisdiction over their standalone *ultra vires* claim. After all, "the exclusion of particular employees," like most FBI employees, "from the CSRA" is not "an invitation to those employees to sue under other statutes but a 'manifestation of a considered congressional judgment that they should not have statutory entitlement to review.'" *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *United States v. Fausto*, 484 U.S. 439, 448–49 (1988)). Plaintiffs have identified no other basis or cause of action—statutory or constitutional—for their *ultra vires* claim. So that claim is precluded by the CSRA's channeling functions. *See Fausto*, 484 U.S. at 448–49 (establishing that employees excluded from the CSRA's protections did not have an independent basis to obtain judicial review of their removals); *Graham*, 358 F.3d at 934–35.

So too for Plaintiffs' mandamus claim. Plaintiffs argue that their mandamus claim is not "ripe for a challenge" under Federal Rule of Civil Procedure 12(b)(1). ECF No. 20 at 37 n.21. They are mistaken. The three threshold requirements to obtain mandamus relief "are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). As explained in Defendants' opening brief, Plaintiffs have failed to satisfy those requirements. *See* ECF No. 17-1 at 23–24. Specifically, the CSRA's review scheme is "the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009). And because the CSRA's scheme was intended to replace "haphazard" lawsuits for "mandamus, injunction, and declaratory judgment," *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.) (quoting *Fausto*, 484 U.S. at 444), Plaintiffs cannot show that they have a "clear right to relief" sufficient to obtain the writ. *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (citation omitted).

Plaintiffs' statutory and regulatory claims (Counts III, IV, and VI) are precluded by

4

the CSRA, and the Court should thus dismiss them under Rule 12(b)(1).

## II.    Plaintiffs' Complaint Should Be Dismissed on the Merits.

All of Plaintiffs' asserted causes of action fail to state a claim because, as Defendants argued in their opening brief, Defendants possessed legal authority under Article II of the Constitution to remove Plaintiffs from the FBI.[1] And, as to Plaintiffs' constitutional claims, Plaintiffs fail to show that they possessed either a property or liberty interest sufficient to plead a procedural due process claim. Similarly, Plaintiffs have not alleged that any right they had to continued employment would qualify to plead a substantive due process claim, and no conduct here would "shock the conscience" so as to justify relief under that doctrine. Finally, Plaintiffs' First Amendment claim fails because they have not shown that their work communicated any expressive message—whether framed as a "political" or "apolitical" message—that warrants protection under relevant doctrine. Dismissal of the complaint pursuant to Rule 12(b)(6) is therefore warranted.

### A.    Defendants' Article II Authority Defeats All of Plaintiffs' Claims.

Plaintiffs' challenge to Defendants' invocation of their Article II authority to remove Plaintiffs distills down to a complaint that (1) neither the President nor the Attorney General ever directly ordered Plaintiffs' removals, at least prior to the removals, *see* ECF No. 20 at 29–32; and (2) Congress has limited the President's (and executive officers') ability to remove officers wielding the executive power, *see id.* at 32–36.[2] Both assertions gloss over the central

---

[1] Plaintiffs assert that Defendants do not contest that Counts III, IV, and VI state a claim sufficient to survive a Rule 12(b)(6) motion to dismiss. *See* ECF No. 20 at 9. Not so. Defendants' asserted Article II authority defeats each and every one of Plaintiffs' claims for relief on the merits, as explained in Defendants' opening brief. *See* ECF No. 17-1 at 9–11.

[2] Plaintiffs do not meaningfully challenge Defendants' argument, *see* ECF No. 17-1 at 9, that Article II renders *any* statutory restriction on Plaintiffs' removal—considering that Plaintiffs, as FBI SES members, wield core executive investigative authority—unconstitutional, other than that the "plain language" of Article II "undercuts Defendants' claims," ECF No. 20 at 32. But the "plain language" of Article II vests the executive power solely in the President (and, through him, in his subordinate executive officers). *See* U.S. Const., art. II, § 1, cl. 1; *see also Printz v. United States*, 521 U.S. 898, 922 (1997) (noting the "unity" of the "Federal Executive").

argument: that the FBI Director, acting under Article II authority, need not seek prior approval before exercising that authority to remove employees like Plaintiffs from their positions. And Article II itself independently provides a sufficient basis to interpret the statutory and regulatory provisions governing FBI SES employment as permitting the exercise of such removal authority. *See Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 775–76 (2025) (applying the constitutional-avoidance doctrine to conclude that "independent" officers were inferior to the Secretary of Health and Human Services because, otherwise, their appointments as principal officers would be unconstitutional).

The President need not personally wield the executive power for the full scope of his Article II authority to attach to a subordinate's—a principal or inferior officer's—use of the power. *See Printz v. United States*, 521 U.S. 898, 922 (1997) (noting that the President "shall take Care that the Laws be faithfully executed" both "personally and through officers whom he appoints" (quoting U.S. Const. art. II, § 3)); *see also Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020) (noting that the "Framers expected that the President," in wielding the "executive Power," would "rely on subordinate officers for assistance" (quoting U.S. Const. art. II, § 1, cl. 1)). Plaintiffs' argument here—that the FBI Director had no "implicit or explicit delegated removal authority," ECF No. 20 at 32—thus fails. Whether the President (or the Attorney General) directed a particular *use* of the executive power is entirely immaterial here. What matters instead is that the President appointed (and the Senate confirmed) the Director, which suffices to confer on the Director—within the scope of his duties as Director—full authority to exercise the executive power on the President's behalf. *See Wilbur v. United States ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) (holding that "the acts of the heads of departments, within the scope of their powers, are in law the acts of the President" (quoting *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879))). Further, the Attorney General subsequently ratified Plaintiffs' removal. *See* Memorandum for the Director, Federal

Bureau of Investigation (Ex. A).[3]

Plaintiffs' argument that Congress has restricted removals of FBI SES employees (as, in Plaintiffs' telling, inferior officers under the Appointments Clause) fails for similar reasons. For one: Defendants argue here that *any* statutory restriction on the President's ability to remove officials who wield core executive investigative powers would violate Article II. *See* ECF No. 17-1 at 9; *Trump v. United States*, 603 U.S. 593, 620 (2024) (noting the Executive Branch's "exclusive authority and absolute direction" to "decide which crimes to investigate and prosecute" (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974))); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) (affirming presidential "general administrative control of those executing the laws" (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)).[4]

In any event, the FBI SES statutory provisions may readily be interpreted to avoid any constitutional conflict that might result from reading them to circumscribe presidential authority over those executing the laws. As Defendants previously argued, the FBI SES statutory provisions do not themselves impose any for-cause restriction on removal of SES employees. *See* ECF No. 17-1 at 14; *see also* 5 U.S.C. § 3151(a)(5)(D); *Braidwood Mgmt.*, 606 U.S. at 775–76 (applying the constitutional-avoidance canon). They merely require the

---

[3] Defendants request that the Court take judicial notice of the Attorney General's ratification as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). And the Court may also consider the ratification as incorporated by implication, given Plaintiffs' allegation that the Deputy Attorney General never dismissed Plaintiffs Driscoll and Jensen. *See* Compl. ¶ 247. The names of individuals not at issue in this litigation have been redacted. A courtesy copy of the Attorney General's Ratification Order has been provided to Plaintiffs' counsel.

[4] Amici Lawyers Defending American Democracy argue that the Constitution, Hatch Act, and longstanding FBI policy all "operationalize" the principles that law enforcement must be wholly apolitical and nonpartisan. *See* Amici Br. at 2, ECF No. 19. If by citing those principles amici mean to suggest that the President is unable to exercise his constitutional prerogative to manage those employees charged with executing the laws, amici fail to account for the most recent and relevant constitutional authority on the matter, *e.g.*, *Trump v. United States*, 603 U.S. 593 (2024).

Attorney General to promulgate regulations that themselves provide for "removal or suspension *consistent with*," 5 U.S.C. § 3151(a)(5)(D) (emphasis added), the first three subsections of § 7543. But the Attorney General has never promulgated FBI SES regulations that might suffice to create an expectation to an entitlement in Plaintiffs' continued employment with the Bureau. *See Palmeri v. Merit Sys. Prot. Bd.*, 164 F.4th 878, 882–83 (Fed. Cir. 2026) (holding that the Federal Circuit lacked jurisdiction over a former DEA SES member's appeal because the CSRA required that appeals be made "through a system established by the Attorney General through regulation," which the Attorney General had not done); *see also id.* at 883 (holding that exercising jurisdiction would contravene Congress's determination "to exclude DEA SES employees" from "the scope" of the MSPB's jurisdiction). Section 7543(a) itself notes that agencies may remove SES employees under Office of Personnel Management regulations "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a). Given the core executive role that FBI SES employees serve within the Executive Branch, a reasonable reading of § 3151 is that removal for "fail[ure] to execute and perform requested tasks," Compl. ¶¶ 189, 199, or for a "lack of reasonableness," *id.* ¶ 205, is indeed "consistent with" the general standard governing the removal of SES employees, especially considering that Congress expressly lessened the procedural remedies available to FBI SES employees under that provision.

  **B.** <u>**Plaintiffs Fail to State Proper Constitutional Claims.**</u>

    **i.** <u>**Plaintiffs Fail to State a Claim Under the Due Process Clause.**</u>

  Plaintiffs have not shown that their constitutional claims are viable. Contrary to Plaintiffs' arguments, *see* ECF No. 20 at 9–14, 19–20, the provisions governing the removal of FBI SES employees do not themselves impose a for-cause removal standard on such employees sufficient to create a protectable constitutional property interest in FBI SES employment. Reliance on *McCabe v. Barr*, 490 F. Supp. 3d 198 (D.D.C. 2020), an interlocutory district court opinion that predates the Supreme Court's most recent executive-power and

removal jurisprudence, does not change that conclusion. And Plaintiffs have not adequately pleaded that they suffered either reputational or employment-related harms from any actions Defendants took. Nor can they show that their fundamental rights were affected. Thus, Count I should be dismissed.

a.  <u>Plaintiffs Lack a Property Interest in Their Continued Employment at the FBI.</u>

The thrust of Plaintiffs' argument that they possessed protected property interests in their continued employment is that a fellow court in this District previously determined that the statutory provisions governing FBI SES employment require good cause to remove such employees and that such an expectation to an entitlement qualifies as a property interest under the Due Process Clause. *See McCabe*, 490 F. Supp. 3d at 218–19; *see also* ECF No. 20 at 9–13, 19–20. But *McCabe* is not persuasive here for three main reasons.

*First*, that opinion predates recent Supreme Court case law further clarifying the nature of the federal executive power and how the exercise of that power bears on the removal of Executive Branch employees. *Trump v. United States*, for example, clearly delineated the nature of the executive authority to investigate and prosecute crimes. *See* 603 U.S. at 620. As relevant here, the then-former President's "threatened removal of the Acting Attorney General" implicated "conclusive and preclusive"—though not *exclusive*—"Presidential authority." *Id.* at 620–21. The President's "'management of the Executive Branch' requires him to have 'unrestricted power to remove the most important of his subordinates'—such as the Attorney General—'in their most important duties.'" *Id.* at 621 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982)). Put simply, *Trump* reinforces that senior FBI personnel—exercising the President's "conclusive and preclusive" executive investigative authority on the President's behalf—have no "legitimate claim of entitlement," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972), to continue wielding that delegated executive power. And the recent opinion in *Kennedy v. Braidwood Management* underscores that the preferable path to assessing such claims is to construe any potentially conflicting statutory

9

provisions so as to avoid any intrusion into the President's core constitutional authority. *See* 606 U.S. at 775–76.

*Second*, the court in *McCabe* rested its conclusion on the "present record," in which the Government assumed at the Rule 12 stage that 5 U.S.C. § 7543 "creates a property interest for covered employees" and rested instead on its argument that a document that it proffered to the court as the relevant FBI SES policy itself contained a different standard than § 7543. 490 F. Supp. 3d at 218. That is not the Government's argument here. Instead, under intervening Supreme Court guidance on the scope of the President's core executive authority and the extent of his general administrative control over his Executive Branch subordinates, Defendants contend that, under the governing statutory provisions, senior FBI employees such as Plaintiffs are employed at will. *See* ECF No. 17-1 at 12–13.

*Third*, that conclusion—that the statutes governing FBI SES employment do not confer any individual rights above and beyond at-will employment—provides the stronger read of the specific provisions at issue here. And a more recent decision from another court in this District has also come to the same conclusion, on a fully developed summary judgment record, contrary to *McCabe*. *See* Memo Op. at 28, *Strzok v. Garland*, No. 1:19-cv-02367-ABJ (D.D.C. Sept. 23, 2025), ECF No. 164 (noting that the plaintiff there, "as a Senior Executive Service employee at the highest level of the Bureau," was "terminable at will"). Further, as Defendants previously argued, *see* ECF No. 17-1 at 14, the conclusion is all the more defensible where the statutory protections available to FBI SES employees would at most include, if applicable, the opportunity to answer any notice of proposed removal orally and in writing. *See* 5 U.S.C. § 7543(a)–(c). Indeed, as Defendants also noted, Congress explicitly carved FBI SES employees out from any right to review before the MSPB. *See id.* § 3151(a)(5)(D) (providing for removal consistent only with subsections (a), (b), and (c) of § 7543). That choice—which limited even further any procedural protections for FBI SES employees—undermines the conclusion that Plaintiffs' procedural rights were sufficiently strong to confer on them a protected property interest. The mere "provision of procedural

safeguards cannot in itself create a property interest for purposes of due process analysis." *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 495 (D.C. Cir. 1988).

> **b.**    **Plaintiffs Did Not Suffer Any Invasion of a Protected Liberty Interest.**

Plaintiffs further fail to provide any alternative basis for this Court to find that their due process claims should survive Defendants' motion to dismiss. Plaintiffs' alternative "reputation-based" procedural due process theory fails for one fundamental reason: they have not shown, and cannot show, that Defendants' statements were defamatory. Indeed, Plaintiffs have not met their pleading burden to show that the statements were either sufficiently specific to Plaintiffs or sufficiently "opprobri[ous]," *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987), to be actionable under the Due Process Clause.

Plaintiffs conclusorily assert that the FBI Director "engaged in false and defamatory public speech that impugned the professional reputation of each Plaintiff." ECF No. 20 at 14. But the statements Plaintiffs invoke—that "[e]very single person that has been found to have weaponized or participated in that process, has been removed from leadership positions," Compl. ¶ 212—fail to mention Plaintiffs at all. Such a statement cannot have defamed Plaintiffs unless the statement clearly and specifically stigmatized Plaintiffs themselves. *See Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016); *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1111 (D.C. Cir. 1985) (holding that a "plaintiff must allege that the government has actually stigmatized his or her reputation by, for example, charging the employee with dishonesty"); *see also Stovell v. James*, 810 F. Supp. 2d 237, 248–49 (D.D.C. 2011) (holding defamatory statements actionable only where "the people who heard them could have understood them as referencing" the plaintiff); *Harmon v. Liss*, 116 A.2d 693, 695 (D.C. 1955) (noting that the "surrounding circumstances" of a statement must "leave no doubt in the mind of the hearer as to" the subject's "identity"); Restatement (Second) of Torts § 564 cmt. a ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff."). As Defendants argued, Plaintiffs have failed to plead that there could

11

be "no doubt" that Director Patel's statements referred specifically to Plaintiffs. *See* ECF No. 17-1 at 16. Plaintiffs allege only that their firings were "covered extensively in the news media" and "publicly known." Compl. ¶¶ 210, 213. But they present no allegations tending to support the conclusion—beyond the fact that their firings were apparently publicly known—that Director Patel's statements were connected (beyond a doubt) to Plaintiffs. Indeed, they provide no serious support for their conclusory allegation that Director Patel's statement was (1) actually about Plaintiffs and (2) that his statement would have been understood by an observer to refer to Plaintiffs. *See* ECF No. 20 at 14. That lack of specificity dooms Plaintiffs' official-defamation claim, meaning they cannot show a violation of their procedural due process rights. *See O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (noting that showing defamation is essential to pleading a "reputation-plus" procedural due process claim).

Further, Plaintiffs have independently failed to show that they suffered "stigmatization" sufficient to lead to the complete foreclosure of their "employment opportunities." *Harrison*, 815 F.2d at 1518. Mere opinion about the quality of an employee's work performance, without more, is insufficient to infringe a liberty interest under the pleading standard for a "reputation-plus" procedural due process claim. *See id.* (noting that being dismissed for "unsatisfactory job performance" does not "carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty"); *see also Mazaleski v. Treusdell*, 562 F.2d 701, 714 (D.C. Cir. 1977) (noting that terminations for "dishonesty, for having committed a serious felony, for manifest racism, for serious mental illness, or for lack of 'intellectual ability, *as distinguished from*'" performance, might affect a plaintiff's liberty (emphasis added) (footnotes omitted)). Plaintiffs attempt to align their complaint to these standards by arguing that the Director's public statements—that "weaponization" and "politicization" might merit termination, *see* ECF No. 20 at 17—act just like statements implying dishonesty, racism, mental illness, or lack of intellectual ability, *see id.* at 16–17. Case law forecloses that kind of argument. Indeed, statements concerning "disruptive conduct,"

12

"improper and substandard job performance," "incompetence, neglect of duty and malfeasance in office," and "highly unethical conduct" do not qualify to affect Plaintiffs' constitutional liberty interests. *Mazaleski*, 562 F.2d at 714 (citations omitted) (collecting cases). At best, the Director's statements here amount to no more than his opinion that Plaintiffs had engaged in "highly unethical conduct" in their duties. *Id.* (citation omitted). Such a statement qualifies squarely as a "situational," rather than an "intrinsic," quality, and is insufficient to show the deprivation of a liberty interest. *Harrison*, 815 F.2d at 1518.

Plaintiffs conclusorily gesture at a "stigma or disability" claim, asserting that Defendants have waived any argument against the success of such a claim. ECF No. 20 at 18 n.13. But, as Defendants argued in their opening brief, Plaintiffs' failure to plead certain elements of their reputation-plus claim also defeats their stigma-or-disability claim. *See* ECF No. 17-1 at 16–18. Specifically, as noted above, Plaintiffs have not shown they suffered stigmatization that would qualify under either procedural due process theory. *See O'Donnell*, 148 F.3d at 1141 (declining to conclude that plaintiff had stated claim because alleged "stigma" was insufficiently severe). And, further, Defendants showed that Plaintiffs have failed to plead that their future employment prospects were sufficiently "hampered" to qualify under either theory. *Jefferson*, 170 F. Supp. 3d at 205 (quoting *Doe*, 753 F.2d at 1111) (noting that both reputation-plus and stigma-or-disability claims require the same proof of harm to future employment prospects); *see also* ECF No. 17-1 at 17–18 (explaining why Plaintiffs have failed to show they have been precluded from working in their chosen fields).

Plaintiffs' failure under their reputation-plus claim underscores why they cannot also plead a viable stigma-or-disability claim. They must show "a change to the plaintiff's 'legal status' that has the '*binding* effect' of 'formally or automatically' excluding the plaintiff from employment, such as an adverse 'determination of [the plaintiff's] legal eligibility.'" *McKinney v. District of Columbia*, 142 F.4th 784, 795 (D.C. Cir. 2025) (alterations in original) (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994)). An automatic exclusion might take the form of a formal debarment. *See McGinnis v. District of Columbia*, 65 F. Supp. 3d 203,

13

215 (D.D.C. 2014). Beyond that, though, a plaintiff can succeed only where he shows that the Government has broadly precluded him from "reentering the field" of his chosen profession. *Kartseva*, 37 F.3d at 1529; *see McGinnis*, 65 F. Supp. 3d at 215. Plaintiffs' allegations do not meet those requirements.

The removal letters the FBI issued to each Plaintiff stated that each was being "summarily dismissed" from their position at the FBI and "removed from the federal service." Compl. ¶¶ 189, 199, 205. Quoting selectively, Plaintiffs characterize that language as purporting to remove them from "*all* 'federal service.'" ECF No. 20 at 15 (emphasis added). But the letters say no such thing. To the contrary: when read in the context of the quoted sentence and the letters as a whole, the language clearly refers to Plaintiffs' specific removals from *the FBI*, the only "federal" agency at which Plaintiffs offered their "service." Plaintiffs cannot possibly allege that these letters effected automatic exclusions from the federal service. *See McKinney*, 142 F.4th at 796; *see also Langeman v. Garland*, 88 F.4th 289, 297 (D.C. Cir. 2023) (holding that, even where a plaintiff had shown he "may very well be excluded from working with the FBI again," it "does not necessarily follow that he would be unable to find employment with any other federal agency indefinitely").

Moreover, to plead a stigma-or-disability claim, a plaintiff must make "some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Langeman*, 88 F.4th at 297; *see also McGinnis*, 65 F. Supp. 3d at 215 (noting that, "[a]t a minimum," a plaintiff "must allege that she has applied for and been rejected from other positions in her field"). As Defendants previously explained, Plaintiffs make no such allegations. *See* ECF No. 17-1 at 17–18. Plaintiffs provide no authority to support their assertion that their rapidly brought lawsuit—"within 32 days of termination"—provides any basis to excuse their burden to plead this essential element of a stigma-or-disability claim. ECF No. 20 at 14 n.7. This claim fails as a matter of law.

Plaintiffs have not shown they possessed a constitutional liberty interest that Defendants unconstitutionally infringed. Thus, their procedural due process claim fails.

14

c.    **Plaintiffs Fail to State a Substantive Due Process Claim.**

As discussed above, Plaintiffs have failed to show that they possess a constitutional property interest necessary to plead a substantive due process claim. *See supra* Section II.B.i.a. As Defendants argued in their opening brief, the substantive due process doctrine requires more than showing that Plaintiffs possess a protected property interest—it requires showing that the interest they possess is "significant." ECF No. 17-1 at 18; *see also McCabe*, 490 F. Supp. 3d at 221. Such an interest arises only where a plaintiff has shown that the Government has interfered with his "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). And, further, even once "a property interest is found," the "doctrine of substantive due process constrains only egregious government misconduct." *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003).

Plaintiffs fail to show that their interest in continued employment as FBI SES members qualifies as a significant property interest under substantive due process doctrine. They cite only to *McCabe* for the proposition that "government employment can, at least at times, constitute a property interest protected by substantive due process." ECF No. 20 at 20 (quoting *McCabe*, 490 F. Supp. 3d at 221).[5] But they fail to provide any basis to conclude that their interest in employment—which, as Defendants have argued, does not even qualify under the procedural due process doctrine, *see supra* Section II.B.i.a—clears the higher bar to show a substantive due process violation. *See McCabe*, 490 F. Supp. 3d at 221 (noting that a

---

[5] Plaintiffs cite *Cleveland Board of Education v. Loudermill* for its recognition of the "significance of the private interest in retaining employment." ECF No. 20 at 20 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985)). But *Loudermill* concerned the "*procedural* protections" required under the Due Process Clause, *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis added), not the nature of a party's fundamental right against a "substantial infringement" or a "deliberate flouting of the law," *Tri Cnty. Indus., Inc. v. District of Columbia*, 104 F.3d 455, 458–460 (D.C. Cir. 1997) (distinguishing between procedural and substantive due process).

substantive due process claim "requires more than a property interest"). Plaintiffs fail to grapple with the argument that an interest in public employment cannot qualify under substantive due process doctrine because "there is no fundamental right to government employment." *United Bldg. & Constr. Trades Council v. Mayor & Council of the City of Camden*, 465 U.S. 208, 219 (1984); *see also McManus v. District of Columbia*, 530 F. Supp. 2d 46, 71 (D.D.C. 2007) (holding that a substantive due process claim for the termination of public employment fails because there is no fundamental right to government employment). Regardless of the procedural protections that might apply to the termination of a public employee, Plaintiffs point to no evidence that public employment is sufficiently "deeply rooted in this Nation's history" to qualify as a protected interest under substantive due process doctrine. *Glucksberg*, 521 U.S. at 721 (citation omitted).

Plaintiffs similarly fail to satisfy the second prong—showing that Defendants' conduct was sufficiently egregious that Plaintiffs suffered "grave unfairness," *Tri Cnty. Indus.*, 104 F.3d at 459 (citation omitted), or that Defendants' conduct "shock[ed] the contemporary conscience," *McManus*, 530 F. Supp. 2d at 71 (citation omitted)—required to state a substantive due process claim. Plaintiffs argue that Director Patel "discarded each of [their] exemplary careers" in "a flippant way." ECF No. 20 at 20. And they contend that, as he did so, he engaged in a "casual willingness to violate the law" by, apparently, contradicting his sworn congressional testimony and engaging in "untruthful" conduct. *Id.* at 21.

Plaintiffs provide no explanation for how a Defendant's sworn congressional testimony might in any way bear on the nature of removals not directly at issue in that congressional testimony. Plaintiffs' arguments entirely elide that their terminations here *were*, as stated in the removal letters, based on performance. *See id.* ¶ 189 (noting Plaintiff Driscoll's "fail[ure] to execute and perform required tasks," which "undermined the leadership of the Department of Justice" by advocating for "insubordination"); *id.* ¶ 199 (noting Plaintiff Jensen's "fail[ure] to execute and perform required tasks, resulting in an unreasonable delay in the execution of FBI priorities"); *id.* ¶ 205 (noting Plaintiff Evans's "lack of reasonableness

and overzealousness in the implementation of COVID-19 protocols and policies"). Plaintiffs' allegations do not establish that Defendants "deliberate[ly] flout[ed]" the law so as to create "grave unfairness" for Plaintiffs. *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988). Nor do Plaintiffs' allegations establish that Defendants deliberately flouted anything.[6] At best, they show an awareness that certain decisions might create litigation risk. Compl. ¶ 186 (alleging Plaintiff Driscoll's recollection that Director Patel knew the firings "were likely illegal and that" the Director "could be sued and later deposed"). Such alleged conduct does not—and cannot—suffice to state a viable substantive due process claim. *See McManus*, 530 F. Supp. 2d at 71–72.

### ii. Plaintiffs Have Not Sufficiently Pleaded a First Amendment Retaliation Claim.

Plaintiffs argue that Defendants have "mischaracterize[d]" their First Amendment claim by "framing Plaintiffs' apolitical work at the FBI as something 'intended to be communicative' of some type of protected expression." ECF No. 20 at 22 (quoting ECF No. 17-1 at 20–21). But that framing is the only way Plaintiffs could possibly succeed under their retaliation theory: by showing that they were retaliated against for some condition on their "political faith." *Elrod v. Burns*, 427 U.S. 347, 357 (1976) (plurality op.); *Branti v. Finkel*, 445 U.S. 507, 515 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), for the proposition that the government cannot deny a benefit to a person for his "constitutionally protected speech or associations").[7] Plaintiffs here *disavow* any intended communicative or political expression in the exercise of their

---

[6] Indeed, the premise of Defendants' motion is that the removals here were lawful.

[7] Plaintiffs attempt to gain the benefit of a purported waiver by noting that Defendants did not assess Plaintiffs' First Amendment claim under "*Elrod* and its progeny." ECF No. 20 at 24. But Plaintiffs' complaint itself fails to plead that "*Elrod* and its progeny" provide the proper basis to assess Plaintiffs' retaliation claim; indeed, their complaint fails to plead that Defendants' actions were not the "least restrictive" means for a "vital government end," ECF No. 20 at 24 n.16 (citation omitted), or that Defendants' justifications for removing Plaintiffs were pretextual. *See* Compl. ¶¶ 235–42. Any related discussion here thus responds to allegations raised for the first time in Plaintiffs' opposition.

employment duties—indeed, Plaintiffs reiterate numerous times that Defendants "terminated Plaintiffs for remaining *apolitical*" and "conduct[ing] their duties in an apolitical fashion" that "avoided voicing allegiance to any political party." ECF No. 20 at 22; *see also id.* at 25 (conceding that Plaintiffs do not allege "that Plaintiffs were fired for speech or conduct made as part of their official duties"). By doing so, Plaintiffs have vitiated any basis they might have for stating a First Amendment claim. If, as Plaintiffs allege, they saw themselves as engaging in the "apolitical performance of their duties," Compl. ¶ 240, then their First Amendment expressive or associational rights were not infringed in any way.

Although Plaintiffs argue that the balancing test in *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), does not apply, *see* ECF No. 20 at 25, that case and courts' later applications of the test illustrate exactly why Plaintiffs' allegations here fall well outside the scope of protections afforded to public employees under the First Amendment. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (applying and clarifying *Pickering*). Indeed, *any* expressive conduct that "owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421–22. Plaintiffs here, just like the plaintiff in *Garcetti*, "did not act as . . . citizen[s] when [they] went about conducting [their] daily professional activities." *Id.* at 422. Plaintiffs allege only that they *were* conducting their daily professional activities—*i.e.*, that they were removed "because of Defendants' perception that their apolitical performance of their duties . . . ran afoul of the political and personal loyalty that Defendants required." Compl. ¶ 240. Whatever else might be said about their claims—for instance, that Defendants' actions violated Plaintiffs' due process rights, *see supra* Section II.B.i, or that Defendants' actions were arbitrary—these allegations simply do not suffice to plead a cause of action under the First Amendment. Plaintiffs were not engaged in expressive conduct, or speech of any kind, that resulted in their

removals. The First Amendment "does not invest" Plaintiffs "with a right to perform their jobs however they see fit." *Garcetti*, 547 U.S. at 422.

Plaintiffs cite *Heffernan v. City of Paterson* for the proposition that Plaintiffs' actual political allegiances are immaterial to showing they suffered unlawful First Amendment retaliation and that Plaintiffs need only show they were fired for failing to support the political party in power. *See* ECF No. 20 at 25 (citing *Heffernan v. City of Paterson*, 578 U.S. 266, 273–74 (2016)). But they read into *Heffernan* much more than the case actually provides. In *Heffernan*, the Supreme Court expressly assumed that "the activities that Heffernan's supervisors *thought* he had engaged in are of a kind that they cannot constitutionally prohibit or punish," like "joining, working for or contributing to the political party and candidates of their own choice." 578 U.S. at 270 (quoting *Rutan*, 497 U.S. at 69). Here, Plaintiffs have failed to show that Defendants "thought" anything of the sort. *See* ECF No. 17-1 at 20–21. And Plaintiffs' allegations describe no activities that Defendants cannot "constitutionally prohibit or punish" that Defendants *thought* Plaintiffs were engaged in, and which prompted Defendants to remove Plaintiffs. Indeed, the only allegations that come close to the minimum required under *Heffernan* and *Rutan* are Plaintiff Driscoll's assertions that he had refused to state his support for President Trump in a transition interview with Paul Ingrassia. *See* Compl. ¶ 62, 64. And after that interview, with full knowledge of Driscoll's responses to Ingrassia, then–Acting Deputy Attorney General Bove recommended that Driscoll be *selected* (not removed) as the FBI's Acting Deputy Director. *See id.* ¶ 67. Any activity Defendants "thought" Plaintiffs may have undertaken did not lead to adverse employment action—indeed, the only allegation concerning such protected activity came immediately before an employment advancement, not an adverse action. *Heffernan*'s application of *Elrod* and *Branti* thus does not control here.

"If an employee does not speak as a citizen, or does not address a matter of public concern, 'a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's

behavior.'" *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 386 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Such a determination holds particularly true where the potential harm the Government might suffer from an employee's expressive conduct is made greater by the employee's "position" and his "working relationship with his supervisor." *Hall v. Ford*, 856 F.2d 255, 261 (D.C. Cir. 1988). Indeed, the "higher the level the employee occupies, the less stringent the government's burden of proving interference with its interest" under the *Pickering* balancing test. *Id.* (citing *Rankin v. McPherson*, 483 U.S. 378, 390 (1987)). And courts assign greater weight to the Government's interests where an employee's role entails, among other things, "vague or broad responsibilities," the "power to control others," influencing "public perception," and "responsiveness to partisan politics and political leaders." *Id.* at 262.

Plaintiffs' claims here readily implicate these weighty Government interests. Plaintiff Driscoll was the Acting Director of the FBI—the head of the Bureau, with significant "power to control others" and a strong influence on its "public perception." *Id.* Similarly, Plaintiff Jensen was the Assistant Director in Charge of the FBI's Washington Field Office, which was, based on the allegations in the complaint, the "fourth most powerful position in the FBI." Compl. ¶ 120. And Plaintiff Evans was the Special Agent in Charge of the Las Vegas Field Office. *See* Compl. ¶ 39. All three occupied high-level positions such that their official duties substantially implicated the Government's interest in ensuring that Plaintiffs could effectively carry out the Government's choices in those roles. *See Hall*, 856 F.2d at 264–65.

Plaintiffs seek redress for actions that their allegations make clear were unrelated to any constitutionally protected activity in which Plaintiffs engaged (or in which Defendants *thought* Plaintiffs engaged). In essence, Plaintiffs ask this Court to endorse their asserted right to retain their public employment simply because they believed they should perform their jobs in one way, and their superiors disagreed. Public employees do not enjoy such a right. Plaintiffs' First Amendment claim (Count II) should be dismissed.

**C.  The Court Lacks Independent Jurisdiction to Award a Declaratory Judgment.**

Plaintiffs erroneously claim that Defendants do not contest subject-matter jurisdiction over their Declaratory Judgment Act claim. *See* ECF No. 20 at 9. To the contrary: Defendants argued in their motion to dismiss that their claim is "precluded by the CSRA" and that such a claim "does not give rise to a cause of action or create an independent source of federal jurisdiction." *See* ECF No. 17-1 at 23; *see also Metz v. BAE Sys. Tech. Sols. & Servs.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014) (noting that it is a "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction" (quoting *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)). As Defendants argued, "there is no freestanding basis for the Court to 'declare' that Defendants have violated the law." ECF No. 17-1 at 23. This Court should dismiss Count V for lack of jurisdiction.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to dismiss.


Dated: March 6, 2026                          Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General

                                              CHRISTOPHER HALL
                                              Assistant Branch Director

                                               */s/ William S. Jankowski*
                                              WILLIAM S. JANKOWSKI
                                              D.C. Bar No. 90021524
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, NW
                                              Washington, DC 20530
                                              Phone: (202) 353-7578
                                              Email: william.s.jankowski@usdoj.gov

                                              *Counsel for Defendants*