IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENJAMIN ODUM SOUTHER,

  Plaintiff,

v.

KASHYAP P. PATEL, et al.,

  Defendants.

CIVIL ACTION FILE NO.

2:25-cv-00150-SCJ

## ORDER

This matter appears before the Court on the Motion to Dismiss filed by the

named Defendants, Kashyap P. Patel, in his official capacity as Director of the

Federal Bureau of Investigation, Federal Bureau of Investigation,

Pamela J. Bondi[1] in her official capacity as Attorney General of the United States,

and the United States Department of Justice. Doc. No. [26].

## I.   BACKGROUND

A review of the record shows that on February 23, 2026, Plaintiff,

Benjamin O. Souther, filed an Amended Complaint against the above-named

---

[1] Since the filing of the Amended Complaint, Bondi is now the Former Attorney General. Pursuant to Federal Rule of Civil Procedure 25(d), the Court will substitute the Acting Attorney General, Todd Blanche, at the conclusion of this Order.

Defendants in which he alleged an unlawful discharge of his employment with

the Federal Bureau of Investigation ("FBI") on October 27, 2021. Doc. No. [24],

¶ 11. The Amended Complaint alleges the following five counts: (1) Violation of

the First Amendment (Retaliation for Political Affiliation); (2) Violation of the

Fifth Amendment (Due Process); (3) Violation of the Fifth Amendment (Stigma

Plus Reputational Harm Due Process Violation); (4) Declaratory Judgment Act

(28 U.S.C. §§ 2201 and 2202); and (5) Writ of Mandamus. Id.

Taking the Amended Complaint's allegations as true in accordance with

applicable authority, the Amended Complaint alleges the following facts.

Plaintiff worked for the Federal Bureau of Investigation as a Special Agent

until he was discharged on October 27, 2021. Doc. No. [24], ¶¶ 11, 24.

Plaintiff states that:

> FBI Deputy Director Paul Abbate, newly appointed in
> February 2021, said on a secure videoconference of field
> and headquarters leadership that he had heard
> employees question the FBI's investigative response to
> January 6.[2] Deputy Director Abbate told the group of all
> senior FBI officials that anyone who questioned the

---

[2] One court has described January 6, 2021 as a "protest of the 2020 national election results at the U.S. Capitol." Trocano v. Am. Airlines, Inc., No. 2:23-CV-645-JES-KCD, 2025 WL 1513335, at *2 (M.D. Fla. May 28, 2025). Another court described the date as: "[o]n January 6, 2021, a mob professing support for then-President Trump violently attacked the United States Capitol in an effort to prevent a Joint Session of Congress from certifying the electoral college votes designating Joseph R. Biden the 46th President

> FBI's response, or his decisions regarding it, did not belong in the FBI and should find a different job.

Doc. No. [24], ¶ 28.

Plaintiff states that "in August 2021, as a member of the FBI SWAT team, he participated in execution of a January 6-related search warrant" at a residence in Atlanta, Georgia. Id. ¶ 30. "After the operation, an unrelated supervisor (Pl) asked Plaintiff for his opinion of the operation." Id. ¶ 31. "Plaintiff stated that he questioned why substantial federal resources were used for that warrant when similar urgency was not consistently applied to other violations, such as crimes against children." Id. ¶ 32. "The supervisor responded that Plaintiff and his 'stupid f***ing SWAT buddies' should find another place to work if they disagreed." Id. ¶ 36.

Plaintiff states that within a month of his statement, "FBI leadership launched an internal investigation premised on the transparently pretextual allegation that Plaintiff had 'posed' as an FBI Special Agent . . . ." Id. ¶ 37. This accusation was lodged by a private citizen. Id. ¶ 40. "The misconduct allegation was never adjudicated through the FBI's established disciplinary process." Id. ¶ 41. "Instead, weeks later, Plaintiff was summarily terminated under the pretext

---

of the United States." Trump v. Thompson, 20 F.4th 10, 15 (D.C. Cir. 2021).

of 'failure to meet suitability standard.'" Id. Plaintiff states that the "FBI approved the Plaintiff's termination on October 27, 2021 — then backdated the effective date to October 26, 2021 in an attempt to fall within the Plaintiff's probationary period." Id. ¶ 42.

Plaintiff states that the termination decision was "consistent with, and executed in furtherance of, Deputy Director Paul Abbate's directive to purge the Bureau of agents whose perceived political beliefs conflicted with the priorities of the Biden Administration." Id. ¶ 45.

A letter was sent to Plaintiff on March 29, 2023 by former FBI Executive Assistant Director (EAD) of Human Resources, Jennifer Moore, regarding his security clearance that states:

> [Souther] should also be aware that information regarding the circumstances and security concerns relating to your dismissal from the FBI may be made known to other federal government agencies should you apply for employment requiring a security clearance.

Id. ¶ 57; see also Am. Compl. Exhibit F (Doc. No. [24-6]).

In 2024, Plaintiff states that he entered the hiring process for the Department of Homeland Security. Doc. No. [24], ¶¶ 48, 51. During the process, he was asked by the Homeland Security Investigation Special Agent in Charge "specific questions regarding the Plaintiff's FBI internal investigation that were

4

not known to the public." Id. ¶ 53. Homeland Security "terminated all hiring discussions immediately thereafter." Id. ¶ 55.

On March 9, 2026, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. [26]. Plaintiff filed a response in opposition. Doc. No. [27]. No reply brief was filed.

This matter is now ripe for review.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than conclusions," [as] [c]onclusory allegations are not entitled to the assumption of truth. Id. (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis

5

"by taking note of the elements a plaintiff must plead to state a claim . . . .") and Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 556. A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555. Although Rule 8(a)(2) does not require a complaint to contain "'detailed factual allegations,'" the Rule does, however, demand "more than an unadorned, the-defendant-unlawfully-

6

harmed-me-accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).[3]

As a *pro se* plaintiff, Plaintiff's pleadings are subject to a different standard of review than those drafted and filed by lawyers. The Supreme Court has held that a document filed *pro se* is "to be liberally construed." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), citing <u>Estelle v. Gamble</u>, 49 U.S. 97, 106 (1976).

## III.   ANALYSIS

The Court will now consider Parties' arguments related to each count of the Amended Complaint.

### A.   <u>First Amendment: Retaliation</u>

"To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: '(1) [his] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [him]; and (3) there was a causal connection between [the] adverse action and the protected speech.'" <u>Long v. Byrne</u>, 146 F.4th 282, 291 (2d Cir. 2025) (citation omitted).

---

[3] Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." <u>Twombly</u>, 550 at 555.

As noted above, in Count I of the Amended Complaint, Plaintiff alleges a claim for violation of the First Amendment (Retaliation for Political Affiliation). Doc. No. [24], ¶ 62. Plaintiff states that he was "terminated for telling the truth when asked — and for refusing, even unknowingly, to subordinate his oath to the Bureau's enforced political orthodoxy." Id. ¶ 67. Plaintiff states that at the time, he was a member of the FBI Swat team, answering the question of an "unrelated supervisor," who asked for his opinion (post-execution of a January 6-related search warrant). Id. ¶¶ 30–31. Plaintiff also states that his statement "was not made pursuant to official duties" and that he "was not responsible for allocating resources or setting policy." Id. ¶¶ 33, 35. Plaintiff asserts that the "statement was made in response to a spontaneous inquiry and based on his concern as a former foster parent." Id. ¶ 34.

In their Motion to Dismiss, Defendants argue that Plaintiff "fails to state a claim because he alleges only private, on-the-job speech, not speech on a matter of public concern." Doc. No. [26], 5.

In opposition, Plaintiff asserts that "the retaliation was triggered not by the manner of the disclosure but by its content—an honest assessment critical of Bureau conduct." Doc. No. [27], 14.

8

While Defendants did not file a reply brief challenging Plaintiff's assertion, the Court independent review show that the Parties' assertions need additional development, as "[a]n employee's speech will rarely be entirely private or entirely public, so courts must determine whether the main thrust of the speech in question was essentially public or private." O'Neal v. City of Hiram, No. 21-11327, 2022 WL 2921303, at *3 (11th Cir. July 26, 2022). In addition, the applicable tests indicate that the Court looks to both the manner and content of the speech at issue. As "[t]he Supreme Court has recognized two ways to analyze First Amendment retaliation claims brought by government employees" (see Pasek v. Kinzel, 566 F. Supp. 3d 1307, 1311 (M.D. Fla. 2021)), the Court will now consider: (1) the Elrod/Branti framework and (2) the Pickering/Garcetti framework.[4]

---

[4] While the Government indicates that this case only fits within the Pickering/Garcetti framework, upon this Court's review, it appears that Plaintiff's allegations could also fit within the Elrod-Branti framework. Cf. Pasek v. Kinzel, 566 F. Supp. 3d 1307, 1312 (M.D. Fla. 2021) ("Distinguishing between Elrod-Branti claims and Pickering-Connick claims is not always easy because political affiliation and political expression often go hand-in-hand."); see also Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989)("Although the cases may overlap in some areas, it is important to retain the distinction between actions that assert employees' right of expression and actions that challenge discharge decisions based on political patronage . . . . Under these circumstances, the Elrod–[B]ranti analysis is the appropriate one and this court must determine whether political loyalty is an appropriate requirement for employment under these circumstances.").

### 1.    *Elrod/Branti framework*

"In cases of discrimination based on political association, [the Court] appl[ies] the test as developed in <u>Elrod v. Burns</u>, 427 U.S. 347 (1976), and <u>Branti v. Finkel</u>, 445 U.S. 507 (1980)." <u>Trujillo v. Huerfano Cnty. Bd. of Cnty. Comm'rs</u>, 349 F. App'x 355, 359 (10th Cir. 2009); <u>see also</u> <u>Jones v. Lamkin</u>, 781 F. App'x 865, 868 n.2 (11th Cir. 2019) (stating that the <u>Elrod-Branti</u> standard "is the standard by which a court determines whether adverse employment actions based on political allegiance contravene the First Amendment"); <u>Pasek v. Kinzel</u>, 566 F. Supp. 3d 1307, 1313 (M.D. Fla. 2021) (providing an overview of Eleventh Circuit's <u>Elrod-Branti</u> "categorical approach" jurisprudence).

While the Court recognizes that it has been held that the <u>Elrod</u>/<u>Branti</u> framework "has not yet been applied to speech retaliation cases in," the Eleventh Circuit (<u>see</u> <u>Leslie v. Hancock Cnty. Sch. Dist.</u>, 994 F. Supp. 2d 1339, 1345 (M.D. Ga. 2014)), the political allegiance allegations of Plaintiff's Amended Complaint appear to place this case within said framework. <u>See, e.g.</u>, Doc. No. [24], ¶ 45.

More specifically, to state a claim under the <u>Elrod</u>/<u>Branti</u> framework, it appears that a plaintiff's compliant must contain factual allegations that: (1) political affiliation and/or beliefs were substantial or motivating factors in his discharge and (2) his position did not require political allegiance. <u>Cf.</u>

10

Poindexter v. Bd. of Cnty. Comm'rs of Cnty. of Sequoyah, 548 F.3d 916, 919 (10th

Cir. 2008) (setting forth the elements in a summary judgment and demotion

context).[5]

Here, Plaintiff alleges that there was a perception by Defendants that his

honesty branded him as an ideological dissident, whose mission did not run to

the "political agenda" imposed from the Bureau above. Doc. No. [24], ¶ 67.

Plaintiff also alleges there was a directive of the Deputy Director of the FBI,

---

[5] The Court recognizes that the Tenth Circuit opinion is non-binding; however, the opinion still provides guidance as to the Elrod/Branti framework. Additional guidance is found in the following Eleventh Circuit unpublished opinion:

> In Elrod, a plurality decision, the controlling concurring opinion held that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." 427 U.S. at 375, 96 S.Ct. 2673 (Stewart, J., concurring) (plurality opinion); see Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (stating that the opinion concurring on the narrowest ground may be regarded as the controlling opinion of a plurality decision). In Branti, the Court clarified that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position [but whether] the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. 1287. This latter statement is the Elrod-Branti standard. Ezell, 802 F.3d at 1223.

Jones v. Lamkin, 781 F. App'x 865, 869 (11th Cir. 2019).

11

Paul Abbate, "to purge the Bureau of agents whose perceived political beliefs conflicted with the priorities of the Biden Administration." Id. ¶ 45. Plaintiff also alleges that "the communications, directives, and deliberative records of those who orchestrated Plaintiff's termination will confirm what the timeline already suggests: that this termination was about politics, not misconduct." Id. ¶ 70.

These allegations plausibly state a claim under the Elrod/Branti framework.

### 2. *Pickering/Garcetti framework*

"On a claim of free speech retaliation by a government employer, [the Court] appl[ies] the test set forth in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731 (1968), as modified by the Supreme Court in Garcetti v. Ceballos, 547 U.S. 410 (2006)." Trujillo, 349 F. App'x at 360.

More specifically, "[t]he Supreme Court sets forth a two-step inquiry into whether the speech of a public employee is constitutionally protected." Alves v. Bd. of Regents, 804 F.3d 1149, 1159 (11th Cir. 2015) (citing Garcetti, 547 U.S. at 418 (citations omitted)).

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on . . . [his] employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes

> whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public [based on the government's interests as an employer].
> Garcetti, 547 U.S. at 418, 126 S.Ct. at 1958 (citations omitted)

"Both steps are questions of law for the court to resolve." Alves, 804 F.3d at 1159.

"For part one of the analysis, if the employee was speaking as an employee rather than a citizen, then there is no First Amendment issue and the constitutional inquiry ends." Williamson v. Alabama Dep't of Mental Health & Mental Retardation, No. 21-13274, 2023 WL 5287873, at *2 (11th Cir. Aug. 17, 2023). Therefore, the Court "turn[s] to the question whether [plaintiff] spoke as a private citizen or, instead, as a government employee." Wood v. Fla. Dep't of Educ., 142 F.4th 1286, 1290 (11th Cir. 2025). "In Garcetti, the Supreme Court observed that "[t]he proper inquiry is a practical one." Id. (citing Garcetti, 547 U.S. at 424). "Importantly, though, the Court emphasized that the 'controlling factor' is whether the employee made [his] statements 'pursuant to [his] official duties.'" Wood, 142 F.4th at 1290 (citing Garcetti, 547 U.S. at 421).

"Factors such as the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job may be relevant, but are not dispositive." Moss v. City of Pembroke Pines, 782 F.3d 613, 618 (11th Cir. 2015). And "the mere fact that a

13

citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Lane v. Franks, 573 U.S. 228, 240 (2014). "The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id.

In a 2016 opinion, the Eleventh Circuit indicated that when a plaintiff files a complaint that pleads "facts that support the claim—if true—that [the plaintiff] spoke as a citizen and not pursuant to his ordinary job responsibilities . . . . [t]he district court should then proceed directly to discovery, which will reveal, among other things, what precisely were [the plaintiff's] ordinary job responsibilities." Carollo v. Boria, 833 F.3d 1322, 1332 (11th Cir. 2016), abrogated on other grounds by Gilmore v. Georgia Dep't of Corr., 111 F.4th 1118 (11th Cir. 2024). In doing so, the Eleventh Circuit noted that "each of the relevant cases from the Supreme Court and [the Eleventh] Circuit to undertake Garcetti's 'practical inquiry' concerning whether a plaintiff spoke pursuant to ordinary job responsibilities or as a citizen did so at the summary judgment stage or later in the life of the case." Id. (collecting cases).

In the case *sub judice*, in his Amended Complaint, Plaintiff asserts that his statement was not made pursuant to his official duties as he was "not responsible

14

for allocating resources or setting policy." Doc. No. [24], ¶¶ 33, 35. He also states that the statement was made "[a]fter the operation" to an "unrelated supervisor," and was "based on his concern as a former foster parent." Id. ¶¶ 31, 34. In following the guidance of the Carollo case, which seems to indicate that such pleadings should proceed to discovery so that the remaining practical inquiry is handled at a later stage of the case, the Court so finds. In essence, while discovery may possibly yield a different result in the summary judgment context, the present pleadings are sufficient to state a plausible claim for First Amendment retaliation.

### B. Fifth Amendment: Due Process—Property Interest

"The fifth amendment to the United States Constitution restrains the federal government . . . from depriving any person of life, liberty, or property without due process of law." Buxton v. City of Plant City, 871 F.2d 1037, 1041 (11th Cir. 1989). A plaintiff "must establish that he has been deprived of an interest that could invoke procedural due process protection." Id.

In Count II the Amended Complaint, Plaintiff alleges that "Defendants unlawfully deprived Plaintiff of both property and liberty interests, without due process of law." Doc. No. [24], ¶ 73. Plaintiff states that "FBI Special Agents hold a reasonable, mutually explicit understanding [that constitutes a protected

15

property interest] — embedded in statute, regulation, and agency policy alike — that they will not face termination, or other adverse action as a consequence of their political beliefs or as a means of compelling political conformity." Id. ¶¶ 78, 79. Plaintiff further states: "[i]n deviating from the FBI's well-established policies and procedures—by injecting a political motivation to terminate plaintiff's employment, defendants deprived plaintiff[] of property without due process of law." Id. ¶ 81.

To establish a claim for procedural due process, the former employee "must show that [he] had a protected property interest in [his] employment." Brett v. Jefferson Cnty., 123 F.3d 1429, 1433 (11th Cir. 1997). "Property interests are not created by the Constitution, but 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Hardison v. Cohen, 375 F.3d 1262, 1268 (11th Cir. 2004) (citations omitted). "Federal law, no less than state law, can provide the rules or understandings that create and define property interests." Id. (citations omitted).

In their Motion to Dismiss, Defendants argue that Plaintiff's "claim for deprivation of property (Count II) fails as a matter of law because FBI agents do

16

not have a property interest in their jobs." Doc. No. [26], 8. In support of their

position, Defendants cite the case of Painter v. FBI, 694 F.2d 255, 257 (11th Cir.

1982) in which the Eleventh Circuit held that: "there is no property interest

created by statute or regulation in [a plaintiff's] employment with the FBI."

Defendants, however, also acknowledge that there is a "narrow, untested

exception," as "the Eleventh Circuit left open the possibility that excepted service

employees[6] could have a property interest in their jobs . . . created by informal

rules and understandings." Doc. No. [26], 10; see also Painter, 694 F.2d at 257

("There is some dispute over whether a property interest in a position excepted

---

[6] Attached to Plaintiff's Amended Complaint is his SF-50 (Exhibit D), which Box 34 shows that Plaintiff occupied an excepted service position. Doc. No. [24-4]; see also 28 U.S.C. § 536 ('All positions in the Federal Bureau of Investigation are excepted from the competitive service, and the incumbents of such positions occupy positions in the excepted service."). It has been stated that "[t]he consequences of one's being in the 'excepted' service (and not a veteran) are that one cannot put on the panoply of protection available to those in the 'competitive' service when threatened by adverse action for cause." Fiorentino v. United States, 607 F.2d 963, 966 (Ct. Cl. 1979); see also Painter, 694 F.2d at 257 ("We note that all positions in the FBI are excepted by statute from procedural protections afforded employees in the competitive civil service and that by regulation excepted employees are expressly excluded from the scope of administrative rules providing procedural protections to civil service employees subjected to adverse employment action." (citing 28 U.S.C. § 536; 5 C.F.R. §§ 1.1); Mack v. United States, 814 F.2d 120, 123 (2d Cir. 1987) ("[I]t is true that even 'excepted service' public employees cannot be discharged for constitutionally impermissible reasons . . . .").

17

from the civil service may nonetheless be created by informal rules and understandings. We need not address this issue, however . . . .").

The Eleventh Circuit appeared to indicate that such a claim would arise from allegations of the "existence of any past practices, employment handbooks, letters of appointment, or understandings from which an expectation of job tenure might arise." Painter, 694 F.2d at 257. Here, Plaintiff alleges that he "possessed a protected property interest in his employment derived from the FBI's historically consistent use of the FBI Ethics Policy Guide" and that he "reasonably understood that the FBI would abide by prohibitions on political coercion, retaliation, and dismissal for pretextual reasons." Doc. No. [24], ¶¶ 74, 75. Plaintiff also states that there is a statutory foundation in 5 U.S.C. § 7321 (which is expressly incorporated into the FBI's Ethics Policy Guide) that reinforces this conclusion. Section 7321 states: "It is the **policy of the Congress** that **employees should be encouraged to exercise fully, freely, and without fear of penalty or reprisal**, and to the extent not expressly prohibited by law, their right to participate or to refrain from participating in the political processes of the Nation." 5 U.S.C. § 7321 (emphasis added).[7]

---

[7] While the Government argues that Plaintiff has not cited to the FBI's Ethics Policy

18

After review, it appears that Plaintiff has pled enough to plausibly fall within the recognized (but untested by binding authority) exception discussed, supra. In essence, while the Defendants may be correct in asserting that Section 7321 reflects an "ideal," the statute also appears to create an informal understanding of a property interest in employment. This Court's ruling is also in light of the persuasive authority that holds that "even one without job security cannot legitimately be dismissed for constitutionally impermissible reasons." Whalen v. City of Atlanta, 539 F. Supp. 1202, 1205 (N.D. Ga. 1982) (citing Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970)).

### C.    **Fifth Amendment (Due Process): Stigma Plus Reputational Harm**

In Count III of his Amended Complaint, Plaintiff alleges a claim for "Stigma Plus Reputational Harm Due Process Violation," i.e., that "Defendant

---

Guide, the Court takes judicial notice that the FBI website contains an "Ethics Handbook for On and Off-Duty Conduct," that references 5 U.S.C. § 7321 when discussing political activities. See https://www.justice.gov/jmd/ethics/ethics-handbook#Political (last visited June 12, 2026); Lamonte v. City of Hampton, 576 F. Supp. 3d 1314, 1327 n.12 (N.D. Ga. 2021) ("[A] court may take judicial notice of government websites."); Levinson v. Islamic Republic of Iran, 443 F. Supp. 3d 158, 170 n.15 (D.D.C. 2020) ("The Court takes judicial notice of this statement on the FBI's website under Federal Rule of Evidence 201(b)."). While it is not clear that the website version of the ethics rules is the same as the one that existed at the time of Plaintiff's 2021 employment, the website reference allows the Court to move forward with its plausibility determination with the caveat that without more, the website reference (to current policies) will not be sufficient for summary judgment and other determinative rulings as to the policy in 2021.

deprived [P]laintiff of that interest[8] by making multiple false statements that impugned [P]laintiff's professional reputation and stigmatized him." Doc. No. [24], ¶ 92. More specifically, Plaintiff asserts that the stigma is that "FBI Headquarters disseminated non-public details from Plaintiff's internal investigation file to a prospective federal employer — HSI." Id. ¶ 93. Plaintiff states that the "plus" is that his "termination on the basis of 'failure to meet suitability standards' — a deliberately standardless and stigmatizing designation — foreclosed not merely his FBI career but his ability to compete for comparable federal law enforcement employment." Id. ¶ 94.

Defendants assert that Plaintiff's claim for reputational harm (Count III) fails as a matter of law because "reputational harm alone is not a liberty interest capable of invoking Due Process Clause protections." Doc. No. [26], 11. Defendants further indicate that in order to state a claim, Plaintiff must "show that a government official's conduct deprived him of a previously recognized property or liberty interest in addition to damaging his reputation." Id. at 12 (emphasis omitted). Defendants argue that because an FBI agent does not have a property interest in his job, Plaintiff's claim fails. Id.

---

[8] In applying the principle of liberal construction, the Court interprets "that interest" as an interest in future employment with Homeland Security.

"[T]o establish a valid claim for the deprivation of a liberty[9] interest based on reputational harm, a plaintiff must satisfy what has come to be known as the 'stigma-plus' test." Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., 48 F.4th

---

[9] In the Fourteenth Amendment context, the Eleventh Circuit has stated:

> The Supreme Court has held liberty, as guaranteed in the due process clause of the fourteenth amendment to mean not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but also the right of the citizen to be free in the enjoyment of all his facilities; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; and to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned. Booth v. Illinois, 184 U.S. 425, 22 S.Ct. 425, 46 L.Ed. 623 (1902); Williams v. Fears, 179 U.S. 270, 21 S.Ct. 128, 45 L.Ed. 186 (1900); and Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). Additionally, liberty has been held to denote the right of the individual to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home, to bring up children, to worship God according to the dictates of one's conscience, and generally to enjoy those privileges long recognized at common law as being essential to the orderly pursuit of happiness by free people. Board of Regents v. Roth, 408 U.S. at 572, 92 S.Ct. at 2706; Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The Supreme Court has declared that the meaning of liberty must be broad. Board of Regents v. Roth, 408 U.S. at 572, 92 S.Ct. at 2706. Bolling v. Sharpe, 347 U.S. at 499–500, 74 S.Ct. at 694–695.

Buxton v. City of Plant City, 871 F.2d 1037, 1045 (11th Cir. 1989). The Court recognizes that "the Fifth Amendment governs the conduct of federal actors, not state actors." Collins v. Bates, No. 17-14559-G, 2018 WL 5090845, at *8 (11th Cir. May 10, 2018).

21

1222, 1234 (11th Cir. 2022) (citation omitted). "Under this test, 'a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." Id. (citing Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001)).[10] "Actionable deprivation of a property interest requires 'a legitimate claim of entitlement to it.' An 'abstract need or desire' for, or a 'unilateral expectation' of, a property interest is not enough." Chabad Chayil, Inc., 48 F.4th at 1234–35 (citations omitted). "The constitutional violation must itself flow from the alleged defamation." Rehberg v. Paulk, 611 F.3d 828, 853 (11th Cir. 2010), aff'd, 566 U.S. 356 (2012). "The rule is designed to prevent the Due Process Clause from becoming an all-purpose constitutionalization of state tort law." Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1437 (11th Cir. 1998).[11]

---

[10] Stated another way, "[t]his doctrine is known as the 'stigma-plus' test, and requires the plaintiff to show both a valid defamation claim (the stigma) and "the violation of some more tangible interest" (the plus)." Rehberg v. Paulk, 611 F.3d 828, 852 (11th Cir. 2010), aff'd, 566 U.S. 356 (2012) (citations omitted); see also Nolen v. Jackson, 102 F.3d 1187, 1190–91 (11th Cir. 1997) ("This doctrine provides a due process remedy where a plaintiff has been deprived of a liberty or property interest without due process of law and where related defamatory statements were made.").

[11] The Eleventh Circuit has recently summarized these principles of law in an unpublished opinion as follows:

22

The case of <u>Buxton v. City of Plant City</u>, 871 F.2d 1037 (11th Cir. 1989) and subsequent jurisprudence are determinative of the pending Motion. In <u>Buxton</u>, the Eleventh Circuit held that "the placing of stigmatizing information in a public employee's personnel file . . . constitutes publication sufficient to implicate liberty interests requiring protection through procedural due process of law proceedings." 871 F.2d at 1038; <u>see also</u> <u>Goffer v. Marbury</u>, 956 F.2d 1045, 1052 (11th Cir. 1992) ("The stigmatizing references to [plaintiff] were published by being placed in her file and by being repeated to the city employee [who called seeking information about [plaintiff] as a possible job applicant]. The evidence

> Although reputation alone does not constitute a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment, "a plaintiff claiming a deprivation based on defamation by the government" can state a procedural due process claim by "establish[ing] the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." <u>Behrens v. Regier</u>, 422 F.3d 1255, 1260 (11th Cir. 2005) (quoting <u>Cannon</u>, 250 F.3d at 1302). To do so, "the employee must prove that: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) was made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." <u>Cannon</u>, 250 F.3d at 1301 (citing <u>Buxton v. City of Plant City</u>, 871 F.2d 1037, 1042–43 (11th Cir. 1989)).

<u>Gardner v. Bottoms</u>, No. 23-12772, 2025 WL 799282, at *9 (11th Cir. Mar. 13, 2025).

was sufficient to submit to the jury on other elements of stigmatization . . . .")
(citation omitted).[12]

While Defendants question whether the Eleventh Circuit's published opinion in <u>Buxton</u>, is still good law, this Court declines to engage in such questioning as it is bound by the published opinions of the Eleventh Circuit and has no authority to overturn them. <u>See</u> <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting within its jurisdiction . . . .") (citations omitted).

---

[12] While Plaintiff cites the Supreme Court's opinion in <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991), this Court does not apply the principles of <u>Siegert</u> as <u>Siegert</u> was not a case against the United States and "[t]he alleged defamation was not uttered incident to the termination of [the plaintiff's] employment." 500 U.S. at 234. As stated by one court:

> The requirement that statements must be made in the course of termination comes from <u>Paul v. Davis</u>, 424 U.S. 693 (1976), in which the Supreme Court "clearly require[d] that the defamation occur in the course of the termination of employment." <u>Renaud</u>, 203 F.3d at 728 n.1. And the requirement that plaintiffs must also allege a foreclosure of future employment also comes from <u>Paul</u>, because the Court held there "that an individual is deprived of a protected liberty interest 'where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity.' " <u>Stidham</u>, 265 F.3d at 1153–54 (quoting <u>Paul</u>, 424 U.S. at 705). Both requirements are thus mandated by Supreme Court precedent.

<u>Howes v. New Mexico Dep't of Health</u>, No. 22-2052, 2025 WL 326074, at *6 (10th Cir. Jan. 29, 2025).

Thus, in light of the above-stated authority, the Court concludes that Plaintiff has plausibly stated a claim for deprivation of a liberty interest based on reputational harm under the stigma-plus test. The Court's ruling is based on the allegations that show that his personnel files contain a stigmatizing designation of "failure to meet suitability standards;"[13] that Plaintiff was not afforded a name-clearing hearing;[14] that there was an FBI Human Resources letter that indicated that "information regarding the circumstances and security concerns relating to your dismissal from the FBI may be made known to other federal government agencies should you apply for employment requiring a security clearance;"[15] and that a potential future employer referenced "specific, non-public details drawn from Plaintiff's FBI internal investigation file . . .[of] information that could only have originated from within the FBI."[16]

Contrary to Defendant's argument, these allegations are plausible (i.e., enough to allow the Court to draw a reasonable inference as to the claim for liablity), and not speculative.

---

[13] See Doc. Nos. [24], ¶ 94; [24-4], 1.

[14] See Doc. No. [24], ¶ 95.

[15] See Doc. Nos. [24], ¶ 57; [24-6], 1.

[16] See Doc. No. [24], ¶ 89.

25

**D.      Remaining Claims**

Defendants assert that Plaintiff's remaining claims (Counts IV and V) lack merit. Doc. No. [26], 13.

### 1.      Count IV (Declaratory Judgment Act)

In Count IV of the Amended Complaint, Plaintiff seeks declaratory relief on all of his identified claims and to establish that his discharge was a legal nullity. Doc. No. [24], ¶¶ 97, 98.

In their Motion, Defendants essentially assert that there is no independent source of federal jurisdiction for a freestanding declaratory judgment claim. Doc. No. [26], 13–14.

As the Court has concluded that Counts I–III state a claim, the declaratory judgment cause of action (Count IV) can remain in the case. See BVCV High Point, LLC v. City of Prattville, No. 2:21-CV-821-WKW, 2022 WL 3716592, at *13 (M.D. Ala. Aug. 29, 2022) ("Because [plaintiff's constitutional] . . . claims survive, there is an independent cause of action that supports [plaintiff's] request for relief in the form of a declaratory judgment. It is therefore inappropriate to dismiss [plaintiff's] requested declaratory relief on Counts 2 and 3.").

### 2.    *Counts V (Writ of Mandamus)*

In Count V of his Amended Complaint, Plaintiff seeks the alternative of a writ of mandamus "commanding Defendants to return him to his former FBI employment in his former office and not remove him from federal service without following lawful procedures." Doc. No. [24], ¶ 101.

In their Motion to Dismiss, Defendants argue *inter alia* that Plaintiff "cannot show that no other remedy might be more adequate or appropriate in this case." Doc. No. [26], 15.

As stated by the Eleventh Circuit:

> "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." Cash v. Barnhart, 327 F.3d 1252, 1257 (11th Cir. 2003) (quoting Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969)). "[T]he test for mandamus jurisdiction is 'whether mandamus would be an appropriate means of relief.'" United States v. Salmona, 810 F.3d 806, 811 (11th Cir. 2016) (quoting Cash, 327 F.3d at 1258). Mandamus jurisdiction may be exercised "only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." Serrano v. U.S. Att'y Gen., 655 F.3d 1260, 1263 (11th Cir. 2011) (citing Cash, 327 F.3d at 1258). "The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable." Id. at 1260, 1263–64 (11th Cir. 2011) (citing In re BellSouth Corp., 334 F.3d 941, 953 (11th Cir. 2003)). "Put another way, a writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of

27

> relief and only if the defendant owes him a clear nondiscretionary duty.'" Cash, 327 F.3d at 1258 (quoting Heckler v. Ringer, 466 U.S. 602, 616, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984)).

Hakki v. Sec'y, Dep't of Veterans Affs., 7 F.4th 1012, 1036–37 (11th Cir. 2021).

Here, Defendants are correct that Plaintiff has not presented sufficient allegations to satisfy the third prong of "no other adequate remedy is available." Id. at 1036. Here, Plaintiff has an avenue for relief/other adequate remedy through the constitutional claims and declaratory judgment counts of the Amended Complaint, which survive the pending Motion to Dismiss. Cf. Myrieckes v. Zickefoose, No. CIV. 10-5118 RMB, 2011 WL 2881228, at *3 (D.N.J. July 14, 2011) ("Therefore, because Petitioner had an adequate remedy under Bivens,[17] his petition for a writ of mandamus is subject to dismissal.").

---

[17] As stated by the Eleventh Circuit:

> Bivens actions are quite similar to those brought under § 1983. As we noted in Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir.1995), "The effect of Bivens was to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials.

Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996).

28

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. [26]) is **GRANTED IN PART as to Count V (Writ of Mandamus) and DENIED as to all other Counts of the Amended Complaint**.

Count V of the Amended Complaint stands **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (No judgment shall issue at this time.)

A responsive pleading shall be filed by Defendants in accordance with the requirements of Federal Rule of Civil Procedure 12.

The Parties shall file their Joint (or separate) Preliminary Reports within **THIRTY DAYS** of the entry of this Order. See LR 16.2, NDGa. ("Pro se litigants and opposing counsel are permitted to file separate statements.").

Pursuant to Federal Rule of Civil Procedure 25(d), the Court **DIRECTS** the Clerk to substitute Acting Attorney General of the United States, Todd Blanche as a Defendant in place of Pam Bondi. Bondi is hereby **TERMINATED** as a named party.

**IT IS SO ORDERED** this 17th day of June, 2026.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

29