# EXHIBIT "2"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JEANNE M. MARRAZZO,** | * | |
| **Plaintiff,** | * | **Civil Case No.: SAG-25-04144** |
| **v.** | * | |
| **ROBERT F. KENNEDY, JR., *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Dr. Jeanne M. Marrazzo ("Plaintiff"), the former Director of the National Institute of Allergy and Infectious Diseases ("NIAID") at the National Institutes of Health ("NIH"), asserts claims against the Department of Health and Human Services ("HHS") and its Secretary Robert F. Kennedy Jr.; the NIH and its Director Jayanta Bhattacharya; and Matthew Memoli, in his official capacity as Principal Deputy Director of NIAID (collectively, "Defendants"), arising out of Plaintiff's September, 2025 termination. ECF 1. Defendants have filed a Motion to Dismiss the Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). ECF 34. Plaintiff opposes the motion, ECF 39, and Defendants filed a reply, ECF 42. This Court has reviewed the filings and held a hearing on the motion on October 22, 2026. ECF 45. For the reasons explained below, the motion will be denied.

## I. BACKGROUND

The following facts are derived from Plaintiff's complaint, ECF 1, and are assumed to be true for the purpose of the motion to dismiss. Plaintiff is a "preeminent physician and internationally recognized scientist with a focus on infectious diseases." *Id.* ¶ 15. After a "rigorous and competitive international hiring process," Plaintiff was appointed as the NIAID Director by former HHS Secretary Xavier Becerra and assumed the position on September 24,

2023. *Id.* ¶¶ 21–22. During her first eighteen months as NIAID Director, Plaintiff "worked with internal and external stakeholders to craft a new NIAID strategic plan, reconstituted the Office of the Director after the previous Director retired, and oversaw and furthered valuable research." *Id.* ¶ 23. For this work, Plaintiff "received the highest possible performance rating in her only performance review dated January 1, 2025." *Id.*

Later in January, 2025, the incoming Trump Administration began making personnel changes within the NIH. *Id.* ¶ 24–25. The Trump Administration appointed Dr. Matthew Memoli to serve as Acting NIH Director, pending the Senate's confirmation of President Trump's nominee for NIH Director, Dr. Jayanta Bhattacharya. *Id.* ¶ 25. At a February 13, 2025, meeting of NIH and NIAID Directors, Dr. Memoli "announced that NIH would be 'doing things differently,' as HHS's agenda was changing to reflect that of Secretary Kennedy and the Administration." *Id.* ¶ 27.

Following this meeting, Plaintiff began engaging in "[i]nternal [w]histleblowing [a]ctivity" in February and March of 2025. *Id.* at 10. At various meetings with NIH, HHS, and White House personnel, Plaintiff "made repeated objections to Dr. Memoli and NIH leadership to actions taken by the Trump Administration that she reasonably believed evidenced a substantial specific danger to public health or safety, gross mismanagement, a gross waste of funds, and scientific censorship." *Id.* ¶ 38; *see id.* ¶¶ 28–37. The actions that Plaintiff objected to included cutting funding for foreign NIAID research, taking anti-vaccine positions, suspending funding for ongoing clinical trials, and changing the process of research proposal solicitation "to ensure their compliance with the Trump Administration's political priorities." *Id.* ¶¶ 28–35.

On March 31, 2025, HHS sent Plaintiff an email informing her that she would be placed on administrative leave beginning the next day and that she should not return to work. *Id.* ¶ 38. The email also proposed reassigning Plaintiff from her position as NIAID Director to a position

within the Indian Health Service ("IHS"), but in the following months Plaintiff "received no further correspondence from HHS regarding the transfer to the IHS." *Id.* ¶¶ 38–39. While she was still on administrative leave, in early May, 2025, HHS removed Plaintiff's access to her NIH email and "all relevant NIH non-public websites." *Id.* ¶ 40.

On September 4, 2025, Plaintiff filed a complaint with the Office of Special Counsel ("OSC") alleging that "HHS retaliated against her for her protected whistleblowing by placing her on administrative leave." *Id.* ¶ 41; *see* ECF 1-1. The same day Plaintiff also filed a disclosure action with OSC reporting concerns regarding HHS's cancellation of NIH grants, use of research funds for senior NIH officials, termination of members of NIAID's board of scientific counselors, and retaliation against whistleblowers. ECF 1 ¶ 41. After filing her OSC complaint, Plaintiff began speaking with the media regarding her concerns with HHS's actions and priorities and her retaliatory placement on administrative leave. *Id.* ¶¶ 42–47.

Secretary Kennedy sent Plaintiff a letter terminating her employment as NIAID Director on September 26, 2025, without any substantive justification. *Id.* ¶ 48. The letter stated:

> Pursuant to the U.S. Constitution, Article II, § 2, cl. 2, and 42 U.S.C. § 284(a), the Secretary of Health and Human Services has the authority to appoint Institute and Center Directors at the National Institutes of Health. Accordingly, in my capacity as Secretary, I have decided to terminate your appointment as the Director of the National Institute of Allergy and Infectious Disease [sic].

ECF 1-2 at 2.[1] In response, on December 10, 2025, Plaintiff filed an addendum to her OSC complaint "alleging that Secretary Kennedy terminated her employment in retaliation for her protected activity, including the filing of her whistleblower retaliation complaint and disclosure

[1] Section (a) of 42 U.S.C. § 284 addresses appointment of the Directors of "national research institutes and national centers" by the HHS Secretary, acting through the Director of National Institutes of Health. Subsection (2)(E) provides: "Nothing in this subsection shall be construed to limit the authority of the Secretary or the Director of National Institutes of Health to terminate the appointment of a director referred to in subparagraph (A) before the expiration of such director's 5-year term." *Id.* § 284(a)(2)(E).

with the OSC, and her statements to the media about matters affecting the public health and safety." ECF 1 ¶ 49; *see* ECF 1-3.

Additionally, on December 16, 2025, Plaintiff filed the instant suit challenging her termination. ECF 1. Plaintiff asserts seven claims: (1) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1) and 706(2); (2) violation of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7513; (3) violation of the Fifth Amendment right to procedural due process; (4) violation of the First Amendment; (5) violation of the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b); (6) a claim for declaratory judgment, 28 U.S.C. §§ 2201 and 2202; and (7) a claim seeking a writ of mandamus, 28 U.S.C. § 1651(a). *See id.* ¶¶ 67–95. Plaintiff seeks declaratory relief, injunctive relief "requiring Defendants to immediately reinstate Plaintiff and enjoining Defendants from taking any further adverse personnel action against Plaintiff without providing appropriate procedural and substantive due process as required by law and the Fifth Amendment," and an award of backpay and appropriate administrative relief. *Id.* at 29–30.

## II. LEGAL STANDARD

When a Rule 12(b)(1) motion contests the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction rests with the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A challenge to jurisdiction may be either facial, *i.e.*, the complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768 (same). In determining whether jurisdiction exists, the district court regards the pleadings' allegations as mere evidence and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

## III. DISCUSSION

In their Motion to Dismiss, Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims because her sole remedy lies in the administrative scheme created by the CSRA. ECF 34.

Under 28 U.S.C. § 1331, federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Generally, federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992) (internal citations and quotation marks omitted). However, Congress's power to establish lower federal courts includes the power to define and limit their jurisdiction. *See* U.S. Const. art. III, § 1; *Lockerty v. Phillips*, 319 U.S. 182, 187 (1943). Pursuant to that power, Congress may require cases to "proceed exclusively through [a] statutory review scheme," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012), and "the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (citing *Elgin*, 567 U.S. at 10–15, and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207–12 (1994)). In *Elgin*, the Supreme Court held that the CSRA is one such review scheme that divests district courts of their ordinary jurisdiction over claims brought by "covered employees who challenge covered adverse employment actions." 567 U.S. 1.

The parties agree that Plaintiff's claims arise under the Constitution and federal law, *see* ECF 34-1 at 8; ECF 39 at 12, and that the CSRA channels many kinds of federal-employment-related claims away from district court jurisdiction, *see* ECF 34-2 at 8; ECF 39 at 18. The question here is whether Plaintiff's specific termination claims fall within the scope of the CSRA scheme. If so, this Court lacks jurisdiction over the claims.

The parties also dispute the applicable legal test to resolve the question. Defendants contend that this Court should apply the *Thunder Basin* test, which asks two questions to determine whether a statutory scheme displaces § 1331 jurisdiction: (1) "whether it is 'fairly discernible' from the ... text, structure and purpose" of the statute that Congress intended the statutory review scheme "to preclude district court jurisdiction," *Elgin*, 567 U.S. at 9–10 (citing *Thunder Basin*, 510 U.S. at 207); and (2) whether the claims at issue "are of the type Congress intended to be reviewed within this statutory structure," *Thunder Basin*, 510 U.S. at 212. *See* ECF 34-1 at 8. Plaintiff argues that the *Thunder Basin* test does not apply to her challenge because her claims "fall outside the scope of the CSRA altogether." ECF 39 at 13–14. In support, Plaintiff cites to *Comans v. Executive Office of the President*, which recently held, while declining to apply *Thunder Basin*, that "termination pursuant only to Article II does not constitute an action taken under" the CSRA. 840 F. Supp. 3d 1048, 1054 (E.D. Va. 2026) (internal citations and quotation marks omitted).

The Court agrees with Defendants that the *Thunder Basin* test applies. When assessing whether a claim falls within the scope of a statutory scheme, the Supreme Court consistently applies the *Thunder Basin* test, even when ultimately finding that the claim falls outside of the scheme. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489–91 (2010) (applying *Thunder Basin* to determine that the Sarbanes-Oxley Act did not preclude the district court from considering petitioners' claims because they fell outside of the statutory review scheme); *Axon*, 598 U.S. at 189–96 (same with regard to the FTC Act and Exchange Act). In fact, the question that Plaintiff is asking this Court to consider—"whether her claims are subject to the CSRA"—"is precisely the question that the first step of the [*Thunder Basin*] inquiry asks." *Comey v. United States Dep't of Just.*, No. 25-CV-7625, 2026 WL 1142679, at *5 n.5 (S.D.N.Y. Apr. 28, 2026). Accordingly, this Court will apply the *Thunder Basin* test here.

**a. *Thunder Basin* Factor One**

The first step in the *Thunder Basin* test asks "whether it is 'fairly discernible' that Congress precluded district court jurisdiction" over Plaintiff's claims by looking to "the CSRA's text, structure, and purpose." *Elgin*, 567 U.S. at 10 (first citing *Thunder Basin*, 510 U.S. at 207, then citing *U.S. v. Fausto*, 484 U.S. 439, 443 (1988)). Citing *Elgin*, Defendants argue that "it is fairly discernible that Congress, in enacting the CSRA, 'intended to deny [covered] employees an additional avenue of review in district court.'" ECF 34-1 at 9 (alteration in original) (quoting *Elgin*, 567 U.S. at 12). Plaintiff does not deny that many federal-employment-related claims fall within the scope of the CSRA but argues that her removal under Article II and 42 U.S.C. § 284(a) does not. ECF 39 at 15.

**i. Text, Purpose, and Structure of the CSRA**

The Court begins by examining the CSRA's text, structure, and purpose. Congress enacted the CSRA in 1978 to "comprehensively overhaul[] the civil service system," and create a "new framework for evaluating adverse personnel actions" against federal employees. *Lindahl v. OPM*, 470 U.S. 768, 773–74 (1985). "Through the CSRA, Congress sought to harmonize the 'haphazard arrangements for administrative and judicial review of personnel action' and to reform an 'outdated patchwork of statutes and rules built up over almost a century.'" *Comey*, 2026 WL 1142679, at *2 (quoting *Fausto*, 484 U.S. at 444). "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions," the "CSRA's text and structure support implied preclusion of district court jurisdiction, at least as a general matter." *Elgin*, 567 U.S. at 11–12.

The CSRA provides employees with procedural protections with regard to three types of personnel actions. First, "Chapter 23 forbids 'prohibited personnel practices,' such as discrimination, coercion of political activity, nepotism, and reprisal against 'whistleblowers.'" *Bosco v. United States*, 931 F.2d 879, 883 (Fed. Cir. 1991), *adhered to on reh'g*, 976 F.2d 710

Case 8:25-cv-04144-SAG Document 46 Filed 11/02/26 Page 8 of 16

(Fed. Cir. 1992) (quoting 5 U.S.C. § 2302 (1988)). Second, "Chapter 43 covers removals and reductions in grade and pay based on unacceptable performance." *Id.* (citing 5 U.S.C. § 4303). Third, and most relevant here, Subchapter II of Chapter 75 "governs review of major adverse actions taken against employees," *Elgin*, 567 U.S. at 5, which must be "taken to 'promote the efficiency of the service' (i.e., involving employee misconduct)." *Bosco*, 931 F.2d at 883 (quoting 5 U.S.C. § 7513). The actions covered by Subchapter II include: "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. § 7512. Subchapter II applies to "excepted service" employees who meet certain requirements regarding probationary periods and years of service, *id.* § 7511 (a)(1), and the parties agree that Plaintiff falls into this category, *see* ECF 34-1 at 3 n.1; ECF 39 at 11.

The court in *Comey* summarized a covered employee's path to challenging a covered action under Chapter 75 via the Merit Systems Protection Board ("MSPB") and Federal Circuit:

> Section 7513 of the CSRA, titled "Cause and procedure," is especially relevant here. First, Subsection (a) provides that "an agency may take an action covered by this subchapter," including removal, "against an employee *only* for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (emphasis added). Second, Subsection (b) provides that "[a]n employee against whom an action is proposed is entitled to" certain procedural protections, including at least thirty days' advance written notice (subject to certain exceptions not relevant here), "a reasonable time" to respond orally and in writing, representation, and "a written decision and the specific reasons therefor at the earliest practicable date." *Id.* § 7513(b). Finally, Subsection (d) provides that "[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board." *Id.* § 7513(d).
>
> Chapter 77 of the CSRA then governs appeals. First and foremost, it "confers on federal employees a broad right to challenge personnel decisions before the [MSPB]." *Frazier*, 672 F.2d at 155. Specifically, Section 7701(a) provides that "[a]n employee ... may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation," 5 U.S.C. § 7701(a), a universe that, pursuant to Section 7513(d), includes "an action ... taken under" Section 7513 against an "employee" covered by Chapter II of the CSRA, *id.* § 7513(d); *see also id.* § 1204. The MSPB is authorized by statute "to order relief to prevailing employees, including reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6 (citing 5 U.S.C. §§ 1204(a)(2), 7701(g)). If an employee is dissatisfied with a decision of the

> MSPB, she is then entitled to judicial review — but (subject to exceptions not relevant here) *only* in the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. §§ 7703(a)(1), (b)(1)(A); *see also* 28 U.S.C. § 1295(a)(9); *Elgin*, 567 U.S. at 6; *Downey v. Runyon*, 160 F.3d 139, 143 (2d Cir. 1998).

2026 WL 1142679, at *2 (footnote omitted).

**ii. Analysis**

Based on the CSRA's text, structure, and purpose described above, this Court must decide whether Congress intended the CSRA to preclude district court jurisdiction over Plaintiff's claims. As Plaintiff was terminated by Defendants for no specified performance-based reason, *see* ECF 1-3, Chapter 75 of the CSRA is the potentially applicable provision. If Plaintiff was terminated under Chapter 75, her claims trigger MSPB jurisdiction and claim channeling, as the Supreme Court found in *Elgin*. 567 U.S. at 11–12. If she was not, and her claims are not covered under any other CSRA provision, jurisdiction lies in this Court.

The jurisdiction-channeling provision of Subchapter II of Chapter 75, Section 7513(d), "does not channel all actions against all employees within the scope of that Subchapter into the MSPB." *Comey*, 2026 WL 1142679, at *5 (citing 5 U.S.C. § 7513(d)). Rather, Section 7513(d) is limited to "action[s] ... taken under this section." 5 U.S.C. § 7513(d). And Section 7513(a) further provides that "an agency may take an action covered by this subchapter against an employee *only* for such cause as will promote the efficiency of the service." *Id.* § 7513(a) (emphasis added). Therefore, "[i]t follows that Section 7513(d) channels into the MSPB — and, by extension, the Federal Circuit — *only* a subset of covered actions, namely those that were taken 'for such cause as will promote the efficiency of the service.'" *Comey*, 2026 WL 1142679, at *5 (quoting 5 U.S.C. § 7701(a) ("An employee... may submit an appeal to the Merit Systems Protection Board from any action which is *appealable to the Board under any law, rule, or regulation*.") (emphasis added)).

Had Congress intended broader MSPB jurisdiction under Section 7513(d), i.e., for jurisdiction to extend to all actions covered by Subchapter II, regardless of the statutory

authority invoked, it would have repeated the language in Section 7513(a)—"covered by this subchapter"—in Section 7513(d) rather than using the more limited phrase "under this section." 5 U.S.C §§ 7513(a), 7513(d); *see Comey*, 2026 WL 1142679, at *5; *Comans*, 840 F. Supp. 3d at 1054. Where, as here, "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in excluding the particular language." *United States v. Espinoza-Leon*, 873 F.2d 743, 746 (4th Cir. 1989) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Therefore, even though Plaintiff is the kind of employee covered by Chapter 75, *see* 5 U.S.C. § 7511 (a)(1); ECF 34-1 at 3 n.1; ECF 39 at 11, and she was removed from her position, which is an action "covered" by Subchapter II, *see* 5 U.S.C. § 7512(1), she must have been removed "for such cause as will promote the efficiency of the service," for the claim channeling and jurisdiction stripping of Chapter 75 to apply. *See id.* § 7513(a). Here, Plaintiff's removal was made "[p]ursuant to the U.S. Constitution, Article II, § 2, cl. 2, and 42 U.S.C. § 284(a)" without any further cause provided. ECF 1-3 at 2. As that reason is not to "promote the efficiency of the service," Plaintiff's claims are not channeled through Chapter 75 of the CSRA.

Recently, two district courts analyzing similar claims in which executive branch employees were terminated without cause pursuant only to "Article II authority" also upheld jurisdiction in the district court because the terminations were to be outside of Chapter 75 of the CSRA. *See Comey*, 2026 WL 1142679, at *6 (addressing removal of a former Assistant U.S. Attorney pursuant to Article II authority); *Comans*, 840 F. Supp. 3d at 1054–55 (addressing removal of the former Chief Financial Officer of FEMA pursuant to Article II authority). Both decisions hinged on the authority invoked by the government in firing each of the plaintiffs: Article II. *See Comey*, 2026 WL 1142679, at *6 ("Defendants' sole reliance on the Constitution – rather than the CSRA's removal provisions – places Comey's case outside

the universe of cases that Congress intended the MSPB to resolve."); *Comans*, 840 F. Supp. 3d at 1052–53 ("Plaintiff's termination is premised only upon the President's asserted Article II powers, not the CSRA …. Taking this fundamental fact together with the plain text of the CSRA, … jurisdiction in federal district court, and not the MSPB, is mandatory."). This Court agrees with the conclusions reached by these district courts and similarly finds that Plaintiff's claims fall outside the CSRA and, therefore, that jurisdiction exists here.[2]

In their reply, Defendants point to Chapter 23 of the CSRA as an alternative avenue for review of Plaintiff's claims. ECF 42 at 4. Defendants argue that Plaintiff's "allegations amount to claims of prohibited personnel practices under Chapter 23," and so "her remedy would be to submit a complaint to the Office of Special Counsel" under 5 U.S.C. § 1214. *Id.* Defendants are correct that Chapter 23 does define "personnel action" to include "an action under chapter 75," 5 U.S.C. § 2302(a)(2)(A)(iii), which includes removals, *see id.* § 7512. However, courts addressing review under Chapter 23 note that it covers "less severe … actions," while Chapter 75 covers "[m]ore severe actions taken against federal employees." *Bakken v. U.S. Mil. Acad.*, 833 F. Supp. 3d. 460, 481–82 (S.D.N.Y. 2026); *see also Refaei v. United States*, 129 Fed. Cl. 1, 19 (2016) ("[T]here are two provisions of the CSRA that cover removal of Federal Employees, Subchapter II of Chapter 75 and Chapter 43."), *aff'd*, 725 F. App'x 945 (Fed. Cir. 2018). The Fourth Circuit has also noted that 5 U.S.C. § 7513 "discusses the procedure for employee removal," while "§ 2302 doesn't cover" termination actions. *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *6 (4th Cir. Apr. 19, 2022). Further, in their brief and at this Court's October 22 hearing, Defendants were unable to identify any authority in which Chapter 23 was used for review of a termination. *See also Comey*, 2026 WL 1142679, at *8 (rejecting the same

[2] Plaintiff's firing differs from those in *Comey* and *Comans* because it was based both on Article II *and* 42 U.S.C. § 284(a). *See* ECF 1-3 at 2. As with Article II, 42 U.S.C. § 284(a) is a basis for Plaintiff's firing that falls outside of the CSRA entirely and therefore does not change this Court's analysis or conclusion that the CSRA does not apply.

argument because the defendants cited, and the court found, "no case in which an employee obtained judicial review of a removal pursuant to the review mechanisms in Chapter 23."). Accordingly, this Court declines to find that the CSRA would channel Plaintiff's termination claims through Chapter 23.

In the absence of any provision of the CSRA into which Plaintiff's claims fall, step one of the *Thunder Basin* test compels the conclusion that Congress did not intend for Plaintiff's claims to be channeled out of the district court, leaving jurisdiction proper in this Court.

**b. *Thunder Basin* Factor Two**

Even if step one of the *Thunder Basin* test had pointed in favor of claim channeling, the second step of the test asks whether Plaintiff's claims "are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212. Three factors guide this inquiry: whether (1) a finding of preclusion could foreclose all meaningful judicial review, (2) the claims are wholly collateral to a statute's review provisions, and (3) the claims are outside the agency's expertise. *Axon*, 598 U.S. at 186. Here, in addition to this Court's analysis above that Plaintiff's particular claims do not fall within the CSRA's scheme, all three factors favor the exercise of jurisdiction in the district court.

First, a finding of preclusion could foreclose "all meaningful judicial review" of Plaintiff's termination claims. *Thunder Basin*, 510 U.S. at 212–13. "True, the Supreme Court has recognized 'the primacy of the MSPB for administrative resolution of disputes over adverse personnel action,' *Fausto*, 484 U.S. at 449, given that the CSRA 'prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review,' *id.* at 443." *Comey*, 2026 WL 1142679, at *10. And in *Elgin*, the Supreme Court concluded that the CSRA's grant of administrative and judicial review over certain actions evinced Congress's intent that that review process be exclusive and therefore preclusive of district court jurisdiction. *Elgin*, 567 U.S. at 11–12. But as discussed above at step one, the

path for Plaintiff to seek review with the MSPB and the Federal Circuit under the CSRA, an appeal of her termination under Chapter 75, is closed because she falls outside of the statutory scheme. "To the extent that the statute would foreclose her from obtaining judicial review of colorable constitutional claims, 'serious constitutional questions ... would arise.'" *Comey*, 2026 WL 1142679, at *10 (quoting *Elgin*, 567 U.S. at 9).

As for the second factor, whether the claims at issue are collateral to the statutory review provisions, the court should consider whether the claim is of a type regularly adjudicated by the administrative body and the relief sought is of a type regularly awarded by that body. For example, in *Elgin*, the court concluded that the constitutional claims at issue were not collateral to the CSRA because they challenged removal decisions, a type of personnel action regularly adjudicated before the MSPB, and the employees sought reinstatement and back pay, types of relief ordinarily awarded by the MSPB. 567 U.S. at 22. In contrast, in *Axon*, the Court concluded that because the constitutional challenge to the ALJs had nothing to do with the merits of the underlying actions before the ALJs or other matters that the ALJs would ordinarily adjudicate, it was collateral. 598 U.S. at 192–93. The Court in *Comey* found the analogous claims at issue to be more similar to those in *Axon* than in *Elgin*:

> At issue here is whether Article II power can be exercised without regard to a congressional statute — that is, whether the CSRA, and its prescribed enforcement mechanisms, are unconstitutional as applied to Article II removals. A claim of that nature is hardly "commonplace"; instead, "as in *Free Enterprise Fund*," it involves a challenge "to the structure or very existence of" the CSRA. *Axon*, 598 U.S. at 189; *id.* at 192 .... Because [plaintiff] "is challenging the [government's] power to proceed with [her] termination at all, not the substantive rationale underlying [her] termination, [her] challenge is collateral to the CSRA review scheme." *Abramovitz* Op. 14 (cleaned up) [*Abramovitz v. Lake*, 25-CV-887 (RCL), ECF No. 76 ("*Abramovitz* Op."), at 13-14 (D.D.C. Aug. 28, 2025)].

2026 WL 1142679, at *11. This Court agrees with this analysis and similarly finds the second factor to weigh in favor of jurisdiction in the district court.

As to the third factor of whether the claim is outside of the administrative body's expertise, personnel matters fall generally within the MSPB's expertise, *see Elgin*, 567 U.S. at 23, whereas most constitutional questions, such as those regarding the separation of powers, do not, *see Axon*, 598 U.S. at 194–95. Defendants argue that the MSPB "routinely considers the CSRA." ECF 34-1 at 14 (internal citations omitted). Plaintiff counters that Defendants "misunderstand[] the issues presented" because this "case is not about the CSRA, but instead whether Article II rends the CSRA protections [Plaintiff] *should have received* unconstitutional," an issue the MSPB has no experience in adjudicating. ECF 39 at 28. When terminating Plaintiff, Defendants relied only on Article II of the Constitution and 42 U.S.C. § 284(a), not the CSRA. *See* ECF 1-3 at 2. "[Plaintiff's] claims, in turn, raise fundamental questions about Executive Branch power under Article II — including whether and how far down the Executive Branch chain the President can delegate his constitutional removal authority — and the constitutional separation of powers." *Comey*, 2026 WL 1142679, at *11. "The MSPB (and Office of Special Counsel) may know 'a good deal' about the CSRA specifically and personnel matters generally, but they know 'nothing special about the separation of powers.'" *Id.* (quoting *Axon*, 598 U.S. at 194). Such matters are traditionally decided by district courts, and so this Court finds that Plaintiff's claims are outside of the MSPB's expertise.

Accordingly, all three *Thunder Basin* step two factors point in favor of district court review of Plaintiff's claims and a finding of subject matter jurisdiction.

**c. Plaintiff's APA, Declaratory Judgment, and Mandamus Claims**

In their Motion to Dismiss, Defendants also argue for dismissal of Plaintiff's APA, Declaratory Judgment, and Mandamus claims. ECF 34 at 15–17. Defendants abandoned these same arguments in their Reply, *see* ECF 42, and at this Court's hearing on October 22, 2026, but this Court will still address each of the arguments briefly.

Case 8:25-cv-04144-SAG Document 46 Filed 11/02/26 Page 15 of 16

**i. APA Claim**

Plaintiff brings a claim under the APA contending that her termination constituted a final agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law;" "contrary to a constitutional right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" and "without observance of procedure required by law." ECF 1 ¶¶ 67–69 (citing 5 U.S.C. § 706(2)). Defendants argue this claim must be dismissed because APA challenges to removals under 42 U.S.C. § 284(a) are unreviewable for lack of judicial standards and because the challenged action is committed to agency discretion by law. ECF 34-1 at 15 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Defendants rely on Subparagraph 284(a)(2)(E), which states: "Nothing in this subsection shall be construed to limit the authority of the Secretary or the Director of National Institutes of Health to terminate the appointment of a director ... before the expiration of such director's 5-year term." 42 U.S.C. § 284(a)(2)(E).

Plaintiff argues that "Subparagraph 284(a)(2)(E) merely clarifies that the fact of the five-year term (established by Subparagraph 284(a)(2)(A), part of the same 'subsection') does not preclude the Secretary from firing a director for a statutorily permissible reason–*i.e.*, to promote the efficiency of the service—before that term expires," but "does not vest the Secretary with *additional* removal authority, let alone authority whose exercise would be unreviewable." ECF 39 at 29 (emphasis in original).

The Court agrees with Plaintiff's argument. While the statutory authority gives Defendants the ability to remove Plaintiff, they must still do so in accordance with the Constitution and any applicable statutes. *See Elgin*, 567 U.S. at 9 (foreclosing all review of constitutional claims raises "serious constitutional question[s]") (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). These other guideposts have judicially manageable standards which can be applied to Plaintiff's claims. *See Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 347 (4th

Cir. 2001) (finding that courts "clearly have manageable standards to review" Due Process and APA claims). Therefore, this Court declines to dismiss Plaintiff's APA claim on this ground.

**ii. Declaratory Judgment and Mandamus Claims**

As for the Declaratory Judgment and Mandamus claims, Defendants raise the same arguments: in the absence of jurisdiction over Plaintiff's claims because of CSRA claim channeling, this Court cannot grant these requested forms of relief. ECF 34-1 at 16–17. Based on this Court's finding that Plaintiff is not covered by the CSRA and jurisdiction is proper in this Court, the Court declines to dismiss Plaintiff's claims on these grounds.

## IV. CONCLUSION

For the reasons stated above, and because application of the *Thunder Basis* test points in favor of jurisdiction in this Court, Defendants' Motion to Dismiss, ECF 34, will be DENIED. A separate Order follows.

Dated: November 2, 2026

/s/
Stephanie A. Gallagher
United States District Judge